CHARLES F. LIEBKE ET AL., Plaintiffs in Error v. L. METHUDY ET AL., Defendants in Error.

May 29, 1883.

1. EVIDENCE — ORAL TESTIMONY TO VARY WRITING. — The rule that oral testimony is inadmissible to vary a writing has no application to a collateral obligation which involves no departure from, but which sup-

plements, a writing which manifestly does not contain the entire contract.

2. —— FRAUDULENT REPRESENTATIONS. — Fraudulent representations going to the essence of a contract, and on the faith of which the contract is made, furnish a cause of action, though not embodied in the written contract, and may be proved by oral testimony.

ERROR to the St. Louis Circuit Court, THAYER, J. *Reversed and remanded.*

G. M. STEWART, for the plaintiffs in error: The scale bill by which the plaintiffs bought the logs in question became a part of the contract of sale, so that defendants are bound by it, although not referred to in the memorandum or bill of sale. — *Chapin* v. *Dobson*, 78 N. Y. 74; *Phelps* v. *Whitaker,* 37 Mich. 72; *Richards* v. *Fuller*, 37 Mich. 161; *Railroad Co.* v. *Walsh*, 85 Ill. 58; *Doulin* v. *Daegling*, 80 Ill. 608; Greenleaf Ev. (9th ed.), sect. 283; Greenleaf (Redf. ed.), sect. 284 *a*; *Wallis* v. *Little*, C. B. (N. S.) 368; *Wake* v. *Harop*, 1 Hurl. & Colt. 200; *Life Assn.* v. *Draven*, 60 Mo. 388; *Moss* v. *Green*, 41 Mo. 389; Benj. on Sales (1st Am. ed.), sect. 203.

KEHR & TITTMANN, for the defendants in error: Oral testimony to vary the terms of a written contract is inadmissible. — *Lazear* v. *National Union Bank*, 52 Md. 79; Story on Sales (4th ed.), p. 426, sect. 360; *New Lindell Hotel Co.* v. *Bailey*, 3 Mo. App. 598. And if a written warranty is given by vendor to vendee, the latter can not recover for the breach of an additional warranty. The written warranty is conclusively presumed to embrace all the warranty that was made. — *Shepherd* v. *Gilfroy*, 46 Iowa, 193; *Mullain* v. *Thomas*, 43 Conn. 252; *Buechtel* v. *Mason Lumber Co.*, 1 Flip. 640. Thus "the warranty of title expressed, is an exclusion of all other warranties not expressed and conclusive, that the defendant will not warrant the quality or soundness." — *Wren* v. *Wardlaw*, Minor, 363; *Pender* v. *Fobes*, 1 Dev. & B. 250; *Smith* v. *Williams*, 1

Murph. 426; cited and approved in *Pearson* v. *Carson*, 69
Mo. 550. In the sale of these logs, the rule *caveat emptor*
applies. There was no implied warranty of quality or of
value. — *Lindsay* v. *Davis*, 30 Mo. 450; Add. on Con.,
sect. 616, p. 211. Where there is an express written war-
ranty, there can be no recovery on an implied warranty.
The law will not imply what is not expressed in a written
instrument. There is no room for an implied warranty in
such a case. — *Lanier* v. *Auld*, 1 Murph. 138; *Dunning*
v. *Foster*, 42 N. H. 165; *McGraw* v. *Fletcher*, 35 Mich.
104; *Sparks* v. *Messick*, 65 N. C. See, also, *Salem Rub-
ber Co.* v. *Adams*, 23 Pick. 256; *Rose* v. *Hurley*, 39 Ind.
81; *McCure* v. *Jeffries*, 8 Ind. 83.

LEWIS, P. J., delivered the opinion of the court.

The plaintiffs, as purchasers from the defendants of a lot
of walnut logs which were lying in Reelfoot Creek, in the
State of Tennessee, sue for breaches of the contract and
guaranty embodied in the sale. The court sustained a
demurrer to the plaintiffs' evidence.

The testimony tended to show that Meyer, a member of the
defendant firm, proposed to Liebke, one of the plaintiff part-
ners, in the city of St. Louis, to sell to the plaintiffs a lot of
five hundred and twenty walnut logs, then lying in Reelfoot
Creek and its tributaries, and at the same time handed to
Liebke a scale bill, showing separately the length and diam-
eter, in feet and inches, of every log. Liebke and Meyer went
over the list together and calculated, by rules familiar to
lumber dealers, the quantity of lumber that could be sawed out
from each log, and the average number of feet per log that the
whole lot of five hundred and twenty would yield. This
average was three hundred and eighty-two feet. Liebke
kept the paper for several days, giving it a careful examin-
ation, and, "on the strength of that scale bill," as he ex-
presses it, agreed to pay $2,750 for the entire lot. The

following papers were thereupon delivered by defendants to the plaintiffs : —

ST. LOUIS, October, 15, 1878.

Messrs. Liebke & Schrage,

Bought of Methudy and Meyer,

Lumber Commission Merchants,

No. 202 South Fourth Street.

| | |
|---|---|
| 520 Walnut Logs . . . . . . | $2,750 00 |
| 50 Poplar Logs . . . . . . | 0,000 00 |

Received notes, sixty and ninety days, and four months from date in payment of above.

METHUDY & MEYER.

"We guarantee the above amount of walnut logs to be in Reelfoot Creek or its tributaries, also our title to same, and, also, that same are free of all incumbrances, excepting a claim which T. Sowell will have of $50 when logs are delivered below Dyersburg bridge.

"METHUDY & MEYER."

"Five hundred and twenty logs being guaranteed in creeks, if more are there, this is to transfer our title to them also.

"METHUDY & MEYER."

And also the following as to the logs in Pawpaw Creek : —

"ST. LOUIS, October 21st, 1878.

"Messrs. Liebke & Schrage:

"In our late sale to you of the Reelfoot walnut, we include all the Pawpaw walnut in the creek (about 50 logs) by you paying the stumpage and giving us hereafter such amount as you may think just and right.

"METHUDY & MEYER."

The notes given were paid by the plaintiffs at maturity. The petition avers that the logs fell far short of the dimen-

sions guaranteed by the defendants, so that their average yield of lumber was only two hundred and twenty-two instead of three hundred and eighty-two feet, per log. When the plaintiffs attempted to prove the deficiency, as realized after the purchase, the testimony was excluded, and the plaintiffs excepted. The learned judge held that the case was one .in which all previous negotiations and undertakings were merged in the written contract, and that no guarantee could be considered which was not contained in the writings delivered by the defendants to the plaintiffs. In these writings nothing was said about the dimensions, or lumber yielding capacity of the logs.

There is a class of cases, exemplified by a large number of adjudications, in which it is held that the rule excluding parol testimony to vary the terms of a written understanding does not apply to a collateral obligation which involves no departure from the terms of the writing, and the proof of which would show what was the entire contract, whereof only a part was reduced to writing. The courts say that, where the writing does not on its face purport to show the whole undertaking, parol testimony is admissible to supply omitted terms. But it is not always easy to reconcile the various processes which discriminate between this class of cases, and that wherein it is assumed that the writing contains the entire contract.

Thus, in *Van Ostrand* v. *Reed* (1 Wend. 424), the defendants sold to the plaintiffs certain exclusive rights in a patented threshing machine, and delivered a bill of sale describing the machine, but containing no covenants. The plaintiffs attempted to show that, in making the sale, the defendants represented and guaranteed that the machine was a new and useful improvement, which was untrue. This attempt was forbidden; the court holding to the presumption of law that the writing contained the whole contract. Yet, in *Chapin* v. *Dobson* (78 N. Y. 74), the plaintiffs gave to the defendant an agreement in writing,

describing in detail certain machines which they were to furnish, and setting forth the method of delivery and the terms of payment; whereupon the defendant was permitted to show that, before the delivery of this writing, there was a parol agreement or guaranty, "that the machines should be so made as to work well, or satisfactorily, or, in case of failure, that they should be taken back and not paid for." We are at a loss for any test by which it may be determined that the instrument in one of these cases purported to contain the entire contract, while that in the other did not. We have examined a large number of cases, in which a similar lack of uniformity seems to prevail. It may be a fair general conclusion, that the courts have endeavored to adapt their rulings, either way, to the obvious demands of abstract justice in each particular case.

Without undertaking to review and harmonize the numerous decisions to which our attention has been directed, we may state in general terms that, in two Michigan cases, we find an application of principles which, in our view, should most fairly control the present controversy. In *Phelps* v. *Whitaker* (37 Mich. 72), a written order for a wind-mill, containing certain stipulations, was given upon the strength of representations made by the agent of the manufacturers and contained in a printed circular, concerning the working capacity of the mill. It was held, in an action for the price of the mill, that the order did not constitute such a contract as would exclude evidence of these oral and printed representations, as collateral guaranties, and of their breach. The court said: "It was also urged that such evidence, as to conversations, was open to objection, as tending to change and enlarge the terms of the written contract between the parties, by parol evidence. * * * Every principle, both of law and justice, should hold a party bound by, and responsible for the

representations, whether oral or written, which he holds out, and relying upon which, a party gives an order, as in this case." In *Richards* v. *Fuller* (37 Mich. 161), Stauffer sold to Hale, by written contract, " all the cherry, walnut, bass wood, white ash, and maple timber on all or any of the lands owned by Stauffer, in Caledonia township." Hale indorsed upon this contract an assignment to Richards of all his " right, title, and interest in and to the within bill of sale or contract." In a suit against Richards on the note given for the purchase, the defendant offered to show that certain statements and representations made by Hale, " with regard to the kinds and amounts of the logs sold," were untrue. The trial court rejected the testimony, on the ground that " the assignment and contract were in writing, and had been put in evidence, and therefore could not be varied by parol testimony." The supreme court reversed the judgment, holding that " the evidence was admissible, and should have been received for the purpose for which it was offered."

It would be difficult to maintain that the guaranty of the mill's working capacity, in one of these cases, or that with regard to the kinds and quantities of the logs, in the other, was any more clearly an unwritten part of an entire contract, than was the description of the logs by scale bill showing their size and producing capacity, in the case before us. It is incredible that any man in his senses, buying logs to be converted into lumber for commercial purposes, would fix and pay the price for a certain number, without knowing, or having the least regard for their sizes, or for the quantity of lumber to be got from them. Five hundred and twenty walnut logs of one size may yield twice, or even five times, as much lumber as the same number of another size or average. The plaintiffs had never seen the logs, and bought solely upon the defendants' representations of what they were. It is, therefore, not

unreasonable to say, that a written contract which omits all mention of so essential an element, does not upon its face purport to contain the entire agreement made between the parties. The rule which excludes parol testimony applies whenever it may properly be assumed that the parties have put in writing all that they intended to be bound by. It was not devised to compel a purchaser to pay, for an article which he never intended to buy, the full price that he was willing to pay for the article he did intend to buy.

There is another view of the question here presented, whose tendency lies in the same direction. An elementary writer says, citing many authorities: " But, if there be a fraudulent representation by the vendor, going to the essence of the contract, — and on the faith of which the contract is made, — the vendee may, by an action on the case, or by a bill in equity, recover upon proof of such representations, although they be not embodied in the written contract." Story on Sales, sect. 360. The petition in this case does not ask for a recovery of damages for a fraudulent representation. Considering, however, that our code does not contemplate any statement of legal conclusions, and that, although the petition may state such conclusions improperly, or may fail to ask for the proper relief, the court will grant whatever remedy may be appropriate to the facts stated, we incline to the opinion that, even as the petition stands, the rejected testimony might have been properly admitted for the purpose of a recovery upon the ground last stated. In any event we think that the ends of justice would have been better subserved, and no controlling technical rule would have been violated, if the testimony offered had been permitted to go to the jury. With the concurrence of all the judges, the judgment is reversed and the cause remanded.