**C. F. LIEBKE ET AL., Respondents, v. L. METHUDY ET AL., Appellants.**

St. Louis Court of Appeals, June 2, 1885.

1. EVIDENCE—COLLATERAL UNDERTAKING.—A collateral writing which involves no departure from the contract sued on, but which supplements it, is admissible in evidence, where the contract sued on manifestly does not express the entire agreement.

2. INSTRUCTIONS—GUARANTY—WARRANTY.—An erroneous instruction given for the plaintiff concerning the quantity of material guaranteed under a contract, is not, on the defendant's appeal, ground for the reversal of a judgment for a less quantity than that actually guaranteed.

APPEAL from St. Louis Circuit Court.—THAYER, J.

*Affirmed.*

KEHR & TITTMAN, for the appellants: The court below erred in permitting the respondents to introduce any evidence tending to prove the existence of the two warranties claimed to have been made by appellants, not expressed in their instrument of writing. Parol evidence to prove either warranty was, in the face of the written instrument, wholly incompetent, because, even where a simple bill of sale is given, merely describing the property sold and receipting the price, or a contract of sale is made, but containing no warranty at all, the purchaser can not prove representations and assertions amounting to warranties, made previous to or contemporaneous with the written instrument. *Jolliffe v. Collins,* 21 Mo. 338; *Peers v. Davis, adm.,* 29 Mo. 184; *Van Ostrand v. Reed,* 1 Wend. 432; *Reed v. Wood,* 9 Vt. 285; *Green v. Clark,* 35 Vt. 577; *Dean v. Mason,* 4 Conn. 431–2; *Munford v. McPherson,* 1 Johns. 414; *Galpin v. Atwater,* 29 Conn. 93; *Hanger v. Evans,* 38 Ark. 338; *Lamb v. Crafts,* 12 Met. 353; *Mast v. Pierce,* 58 Iowa 579; *Randall v. Rhodes,* 1 Curtis (U. S.) 90; *Kain v. Old,* 2 B. & C. 627; *Lowber v. Connit,* 36 Wis. 176; *Frost v. Blanchard,* 97 Mass. 155. And if a bill of sale containing a written warranty, or a written warranty is given by vendor to vendee, the latter can not recover for the breach of an additional warranty. The written warranty is conclusively presumed to embrace all the warranty that was made. An express warranty legally and necessarily excludes all other warranties. *Hanger v. Evans,* 38 Ark. 338; *Shepherd v. Gilfroy,* 46 Iowa 193; *Mullain v. Thomas,* 43 Conn. 252; *Buechtel v. Mason Lumber Co.,* 1 Flippin (U. S.) 640; *Wren v.*

*Wardlaw*, Minor's Rep. 363; *Pender v. Fobes*, 1 Dev. & Bat. 250; *Smith v. Williams*, 1 Murphy 426; *Lamer v. Auld*, 1 Murphy 138; *Dunning v. Foster*, 42 N. H. 165; *McCraw v. Fletcher*, 35 Mich. 104; *Sparks v. Messick*, 65 N. C.; *Budd v. Fanmann*, 8 Bing. 52, per Tindal, C. J.; *Osborn v. Nicholson*, 13 Wall. (U. S.) 655. *Duff v. Ivy*, 3 Stew. (Ala.) 144; *Mast v. Pierce*, 58 Iowa 579. Where the written contract purports on its face to be a memorial of the transaction, it supersedes all prior negotiations and agreements, and that oral testimony will not be admitted of prior or contemporaneous promises on a subject which is so closely connected with the principal transaction, with respect to which the parties are contracting, as to be part and parcel of the transaction itself, without the adjustment of which the parties can not be considered as having finished their negotiations and finally concluded a contract. *Naunberg v. Young*, 44 N. J. Law 331; *Hei v. Heller*, 54 Wis. 415; *Hubbard v. Marshal*, 50 Wis. 322; *Green v. Casey*, 70 Ala. 417; *Dutton v. Gerrish*, 9 Cush. 89.

G. M. STEWART, for the respondents: The paper in question was one of the " contemporaneous writings relating to the same subject-matter;" without it the contract of the parties as made cannot be fully shown. *Liebke v. Methudy*, 14 Mo. App. 65; *Chapin v. Dobson*, 78 N. Y. 74; *Phelps v. Whittaker*, 37 Mich. 72; *Richards v. Fuller*, 37 Mich. 161; *R. R. Co. v. Walsh*, 85 Ill. 58; *Doulin v. Dægling*, 80 Ill. 608; Greenleaf Ev., 9th Ed., § 283; Greenleaf Red. Ed., § 284 a; *Wallis v. Little*, C. B., N. S. 368; *Wake v. Harop*, 1 Hurdston & Coltman 200; *Life Ass'n v. Gravin*, 60 Mo. 388; *Moss v. Green*, 41 Mo. 309.

ROMBAUER, J., delivered the opinion of the court.

This action is brought to recover damages for a breach of warranty in the sale of logs. The plaintiffs' petition states that, at the time of the purchase and for

the consideration paid, "defendants guaranteed that there were then in Reelfoot creek and its tributaries, at least 520 walnut logs, which would produce an average of three hundred and eighty-two feet of sound lumber per log, and fifty logs on Paw Paw creek of the same dimensions."

The petition then avers that plaintiffs paid the consideration of the sale, but that the logs purchased of defendants in Reelfoot creek and its tributaries did not produce an average of 382 feet of sound lumber to the log, but, on the contrary, they produced on an average only 222 feet of lumber per log, and the lumber so produced was not sound, but was worm-eaten, decayed, and otherwise defective, and of an inferior quality, in consequence whereof plaintiffs say they were damaged in the sum of fourteen hundred dollars. The petition contained a further allegation as to the breach of warranty of plaintiffs' title, in regard to the logs in Paw Paw creek, which it is unnecessary to consider, as the court upon defendants' request took that branch of the case from the jury, there being no evidence to support it.

Defendants' answer was a general denial. The cause was tried by a jury, who, under the instructions of the court, found for plaintiffs, and assessed their damages at $291.65.

Upon a former trial of the cause the trial court nonsuited the plaintiffs, but its action in so doing was reversed by this court. 14 Mo. App. 65.

The writtten contract between the parties, which was before the court then, and is before the court now, is as follows:

St. Louis, October 15, 1878.
*Messrs. Liebke & Schrage,*
Bought of Methudy & Meyer, Lumber and Commission Merchants, No. 202 South Fourth St.,—

520  walnut logs......................$2750.00
50 poplar logs...................... 0000.00

Received notes sixty and ninety days, and four months from date, in payment of above.

Methudy & Meyer.

We guarantee the above amount of walnut logs to be in Reelfoot creek, or its tributaries, also our title to the same, and also that same are free of all incumbrances, excepting a claim which T. Sowell will have of $50 when logs are delivered below Dyersburg bridge.

METHUDY & MEYER.

Five hundred and twenty logs being guaranteed in creeks, if more are there, this is to transfer our title to them also.          METHUDY & MEYER.

The main contention at the former trial was whether the plaintiffs should be permitted to give oral testimony of representations which they claimed were made to them in regard to the size and quality of the logs, antecedent and cotemporaneously with the date of the sale and the execution of the above memoranda.

This guaranty plaintiffs claimed by virtue of the exhibition to them by one of defendants, of a certain scale bill, purporting to give the measurement of the logs, and the representations of one of defendants, made to them that the logs would hold out according to the measurement of the scale bill.

When the case was here before, this court said: "The testimony tended to show that Meyer, a member of the defendant firm, proposed to Liebke, one of the plaintiff partners in the city of St. Louis, to sell to the plaintiffs, a lot of 520 walnut logs, then lying in Reelfoot creek and its tributaries, and at the same time handed to Liebke a scale bill showing separately the length and diameter in feet and inches of every log. Liebke and Meyer went over the list together, and calculated by rules familiar to lumber dealers, the quantity of lumber that could be sawed out from each log, and the average number of feet per log that the whole lot of 520 would yield. This average was 382 feet."

The petition stated that the logs fell far short of the dimensions guaranteed, that the average was only 222 feet, instead of 382 per log. The trial court at the former hearing did not permit plaintiffs to prove this deficiency, holding that no guaranty could be considered which was

not contained in the writings delivered by defendant to plaintiff. Upon this showing when the case was here before this court held that the testimony in regard to defendants' representations, and the scale bill, and that the yield of the logs fell far short of such scale bill, should have been admitted, and after citing *Phillips v. Whittaker* (37 Mich. 72) and *Richards v. Fuller* (37 Mich. 161), in its support, said : " It is incredible that any man in his senses, buying logs to be converted into lumber for commercial purposes, would fix and pay the price for a certain number, without knowing or having the least regard for their size, or for the quantity of lumber to be got from them. Five hundred and twenty walnut logs of one size may yield twice, or even five times as much lumber as the same number of another size or average. ₁The plaintiffs had never seen the logs and bought solely upon the defendants' representations of what they were."

We have quoted thus fully from the former opinion of the court, because we are now requested by appellants to re-examine the law, as then decided, upon the facts stated therein. We have done so and have reached the same conclusion. The general rule undoubtedly is, that when parties reduce their ageeement to writing the presumption arises that the writing contains the whole contract. This rule, however, is subject to so numerous exceptions, that it has long ceased to be a rule of universal application. The difficulty in most cases has been to determine whether the cause before the court did or did not fall within the exceptions thus engrafted upon the rule. What would seem to be a contradiction between the cases arises not so much from a determination as to the nature of the exceptions, as from the difficulty of deciding whether any given case falls properly within the exceptions thus determined.

We must hold that upon the facts stated in its former opinion, the conclusion reached by the court was correct. Plaintiffs had seen the logs, defendants had not. The scaling was done by defendants' agents, and represented by defendants to plaintiffs as reliable. The very basis of

the trade was the scale bill and its substantial accuracy
So far we presume the testimony was free from doubt at
the former trial, as it is free from doubt now. To rule out
the scale bill under such circumstances, and to hold that
defendants complied with the terms of their contract,
provided they delivered to plaintiffs logs of any quality
and dimensions whatever, if they were walnut logs, 520
in number, and lying in Reelfoot creek, would be giving
a construction to the contract which neither of the par-
ties contracting contemplated at the time.

There is, however, a difficulty in the case of a more
serious character, and that is that the opinion of the court
is based upon a state of facts which was probably shown
by the record then before it, but which is not shown by the
record now before us. The scale bill which formed the
basis of the contract, is not a scale bill of 520, but 583 logs
in Reelfoot creek. It is conceded on all hands that
plaintiffs guaranteed only 520 logs. Assuming, therefore,
that the scale bill was a guarantee, that the logs would
come up substantially to the measurement therein given,
it could be held to be a guarantee only that there were in
Reelfoot creek 520 logs, the subject of the sale, and that
the measurement of said 520 logs was given among the
measurement of the 583 contained in the scale bill.
Plaintiffs' guarantee in the absence of fraud would have
been complied with by a delivery of any 520 logs, form-
ing part of the 583 described in the scale bill, even
though the logs thus delivered were the smallest of the
number. Of fraud there is not a tittle of evidence in
the case.

The trial court in its instructions to the jury held
that the scale bill was in the nature of a guarantee of
logs of a certain quality, averaging a certain number of
feet per log. This instruction may have been justified
by the language of the former opinion of this court, and
by the facts therein stated, but is certainly erroneous as
applied to the state of facts disclosed by the record be-
fore us and above stated. Holding that this instruction
of the trial court was erroneous, we have carefully ex-
amined the testimony for the purpose of determining

whether any warrant can be found in the verdict of the jury for holding that the error was prejudicial to defendants' rights.

The uncontradicted testimony in the case shows that the logs delivered to defendants were handled by them to the best advantage, and sawed into inch lumber. yielding an aggregate not exceeding 123,000 feet, board measure, and that the contract between the parties was based upon an estimate of $13.00 per thousand feet, board measure, in the log.

The original scale bill now produced before us on which the board measure of each log as scaled is carried out by plaintiff according to rules and in a manner the accuracy of which is not impeached, shows the following figures :

| | | | | | | |
|---|---|---|---|---|---|---|
| Logs containing between 100 and 200 feet b.m. | | | | | | 63 |
| " | " | " | 200 and 300 | " | " | 143 |
| " | " | " | 300 and 400 | " | " | 160 |
| " | " | " | 400 and 500 | " | " | 91 |
| " | " | " | 500 and 600 | " | " | 65 |
| " | " | " | 600 and 700 | " | " | 26 |
| " | " | " | 700 and 800 | " | " | 19 |
| " | " | " | 800 and 900 | " | " | 12 |
| " | " | " | 900 and 1000 | " | " | 2 |
| " | " | " | 1000 and 1100 | " | " | 2 |

Making an aggregate of.................. 583

Taking 520 of the logs, smallest in dimensions as given on the scale bill, and their contents in board measure, according to scale bill, would still be over 217,000 feet, showing a difference between their contents, as per scale bill, and their contents, as per actual yield, of 94,000 feet, or an actual loss to plaintiffs, at the rate of $13 per thousand, regardless of quality, of $1222.00.

As there was evidence before the jury tending to show that the logs did not hold out according to scale bill ; as concerning the substantial facts of the guarantee there is no controversy ; as a verdict for plaintiffs, even under absolutely correct declarations of law, would have

been justified for a much larger amount than the amount of $291.65 actually recovered, we are of opinion that the judgment of the trial court should be affirmed. All the judges concurring, it is so ordered.