The J. K. Armsby Company, Respondent, v. Gustavus A. Eckerly, Appellant.

| 42 | 299 |
| 98 | 458 |

St. Louis Court of Appeals, November 25, 1890.

1. **Practice, Trial:** PRODUCTION OF ORIGINAL PAPER : PRESUMPTION. If an original telegram, partly in cipher, be produced in this court by the party sending it and introducing it in evidence at the trial, and if, when so produced, it contains interlineations in pencil explanatory of the expressions in cipher used in it, but the copy in the transcript does not show such interlineations, it cannot be presumed, in the absence of evidence, that these interlineations were contained in the telegram at a particular time prior to the trial, at which the addressee showed it to one of the parties to the suit.

2.  **Sales:** STATUTE OF FRAUDS : MEMORANDUM : EXTRINSIC ORAL EVIDENCE. If the memorandum of a contract of sale shows the sale of one car of apples, without designating the exact quantity of boxes, or any stipulated time of delivery, and a controversy arises as to these matters, the memorandum may be supplemented by oral evidence on these points.

3.  ——: ——: ——: WRITINGS. Where other writings are appealed to for the purpose of helping out a defective memorandum of sale, they have usually been writings which have passed between the same parties as to the subject-matter ; but this is not necessarily so, provided the writing is one executed by the parties sought to be charged.

4.  **Practice, Trial:** CONCLUSIVENESS OF EVIDENCE. There being a sale of apples, and a dispute as to the exact number of boxes contracted for, the seller contending that it was five hundred boxes, and the buyer contending that it was three hundred and sixty boxes, an invoice, rendered by the seller to the buyer, stating the quantity at the latter amount, conclusively establishes the contention of the buyer, in the absence of explanation.

*Appeal from the St. Louis City Circuit Court.*—HON. JAMES E. WITHROW, Judge.

REVERSED AND REMANDED.

*H. A. Haeussler* and *Fidelio C. Sharp*, for appellant.

( 1 ) The court admitted improper evidence for plaintiff: *First*, the dispatch ; *second*, evidence as to what was said at the time of making contract ; *third*, as to what passed between plaintiff and its broker before the alleged sale was agreed upon, or sale note made. *Scarritt v. Church*, 7 Mo. App. 175; *Schlessinger v. Railroad*, 13 Mo. App. 471, and 87 Mo. 146; *Hotel Co. v. Bailey*, 3 Mo. App. 598. ( 2 ) There was no evidence to support the judgment, and, under instructions given for defendant, there could, on the evidence, be no recovery. ( 3 ) The paper called a sale note could at best be the only evidence to bind the defendant ; it expressed the entire contract, except, possibly, that

it was uncertain what was the carload intended; and nothing that had previously occurred between the broker and defendant, or between plaintiff and the broker, was admissible to add to or explain the contract. *Kingsland & Co. v. Railroad*, 2 Mo. App. 537; *Liebke v. Methudy*, 14 Mo. App. 65; *Lash v. Parlin*, 78 Mo. 397; *New L. H. Co. v. Bailey*, 3 Mo. App. 598; *Scarritt v. Church*, 7 Mo. App. 175.

*G. M. Stewart*, for respondent.

THOMPSON, J.—The plaintiff claims to have sold to the defendant, through a broker, on or about the ninth of September, 1887, one carload containing five hundred boxes of evaporated apples, star brand, to be shipped from western New York the following week, at the price of ten and three-fourths cents per pound; that, when the shipment arrived, the defendant refused to receive the same; whereupon the plaintiff, after notifying the defendant and inviting sealed bids, sold them to the highest bidders, and now seeks to recover the difference between what the defendant agreed to give for them, and what they brought at the sale, and also the cost of selling them. The issue, which was tried, was made by the second count of the petition and a general denial (the first count having been dismissed by the plaintiff). The defendant in his evidence admits that, on the day named, he agreed to purchase of the plaintiffs, through the broker in question, three hundred and sixty boxes of evaporated apples, of the brand named, at the price named, but on condition of immediate delivery. This statement exhibits the points of difference between the parties.

The plaintiff does business in Chicago, and the defendant in St. Louis. The plaintiff gave evidence tending to show that, on the eighth or ninth of September, its agent, the St. Louis broker, called on the defendant at his office and showed him the following telegram:

" CHICAGO, September 9, 1887.

"*Deming Commission Company* :—

"Sell *grained* —— star-brand, evaporated apples *abstrusely* delivered St. Louis next week's shipment from western New York.

"J. K. ARMSBY CO."

The broker laid the telegram on the defendant's desk. The defendant took it up and looked at it. The broker testifies that he does not know whether or not the defendant read it. He claims to have then sold to the defendant five hundred boxes of the evaporated apples to be shipped the following week from western New York at ten and three-fourths cents per pound.

On the following day the broker sent to the defendant the following sold note :

"ST. LOUIS, September 10, 1887.

"Bought for account Messrs. G. A. Eckerly & Co., St. Louis, from J. K. Armsby Co. :

"1 car star evaporated apples at 10¾ cts. per pound delivered.

"Terms, 30 days acceptance,

"To be shipped, *via*............

"DEMING COMMISSION CO.,

"Brokers."

One week later the plaintiff, from its office in Chicago, sent the defendant the following bill of goods :

"THE J. K. ARMSBY CO.

"Wholesale Commission and Brokerage.

"39 RIVER STREET, CHICAGO, 9–16–1887.

"*Messrs. G. A. Eckerly & Co., St. Louis, Mo.*

"Terms, 30 days.

"360 boxes evaporated star apples...$1,935 00

"18,000, 10¾

"In car consigned to Deming Commission Company, who will deliver goods on arrival."

On September 26 a carload of apples containing five hundred boxes arrived from western New York, sent to the broker. He tendered them to the defendant under the contract, and the defendant refused to receive them, whereupon, after notice to the defendant, they were sold upon sealed bids, "for account of whom it may concern." At this sale the defendant purchased three hundred and sixty boxes at the price of ten cents per pound. A letter of the defendant to the plaintiff, dated October 21, 1887, was put in evidence, containing the admission that the defendant agreed to take four hundred boxes, whereas the plaintiff billed him for only three hundred and sixty.

It is perceived that there is no difference between the plaintiff and the defendant as to the fact that there was a transaction between them on the eighth or ninth of September, 1887, whereby the defendant agreed to purchase of the plaintiff a quantity of evaporated apples of the star brand at the price of ten and three-fourths cents per pound. But it is observed that there were two points of difference between them : *First.* The plaintiff's contention is that it was to be one carload containing five hundred boxes, while the defendant's contention is that it was to be three hundred and sixty boxes. *Second.* The plaintiff's contention also is that it was to be a carload shipped not later than the end of the following week,—that is to say, not later than the seventeenth of September,—from western New York ; while defendant's contention is that it was a contract for prompt delivery. There were thus two very important points of difference between them,—the first as to the amount of the goods sold, and the second as to the time of arrival ; for the evidence shows that the carload would come from Chicago in from two to five days, and from New York in from seven to ten days. In point of fact the car seems to have been about ten days in transit from western New York.

The foregoing statement will enable us to understand the principal assignment of error made by the appellant, which is that the court erred in admitting in evidence, against his objection, the telegram above set out. We ought to state in this connection that we have been applied to by the respondent for a *certiorari* to perfect the record in respect of this telegram, but have refused the motion, as there was nothing to show that the clerk had erroneously copied it into the record. We have, however, power under the statute to send for the original, and it has been produced by the respondent and submitted to us. It follows the language in which the clerk has copied it, but with the addition that, over the word "grained" is written *in pencil*, "one carload," and over the word "abstrusely" is written in pencil "ten and three-fourths," It is perceived that the telegram, as written in ink, is a cipher telegram, in so far as it makes use of two unintelligible words, "grained" and "abstrusely." The record is entirely silent as to how the pencil interlineations came to be inserted in the message, or whether they were in it when it was shown to the defendant by the broker to whom it had been sent by the plaintiffs. Under these circumstances we cannot indulge in the presumption that the pencil words were a part of the message as received, or that they were on the message when it was exhibited to the defendant. When exhibited to the defendant, it was, therefore, so far as the record discloses, unintelligible. Moreover, it was not even shown that the defendant *did* read it, even if he could have done so. We are, therefore, unable to understand any theory on which it could have been admitted in evidence. If the broker had received a telegram from the plaintiff, directing him to sell one carload of star-brand evaporated apples containing five hundred boxes, and the dispatch had otherwise read as this one does ; and if the broker had exhibited that dispatch to the defendant, and offered to

sell to him the particular consignment there named, and the defendant had accepted the offer, the dispatch itself would have been corroborative evidence in favor of the plaintiff's theory of the facts. But, as it is, no proper foundation seems to have been laid for its introduction on this theory.

But, if the telegram, together with its pencil inter-lineations, could have been admitted in evidence, it would have tended to help out the plaintiff's theory only as to the *time* of shipment; it would have had no such tendency as to the *number* of boxes covered by the transaction. The oral testimony of the plaintiff's broker, Deming, that the quantity was to be five hundred boxes, was received without objection. Nevertheless, as the question has been discussed in the briefs filed by the respective parties, we can see that it may be material on another trial to consider whether extrinsic evidence is admissible in the case of a sale of a carload of goods, where the memorandum does not show the exact quantity the parties intended. We are of opinion in conformity with the ruling of this court in *Liebke v. Methudy*, 14 Mo. App. 65, that it is. But the best evidence, in case of a misunderstanding on such a point, is the interpretation which the parties put on the contract themselves; and the deliberate act of the plaintiff in billing the shipment to the defendant a week after the transaction had been entered into, and ten days before the goods arrived, as three hundred and sixty boxes, *in* a car sent out to their broker, shows that both parties had the same understanding of the contract as to the quantity of the goods sold. In the absence of any explanation, vouchsafed by the plaintiff, of this bill rendered by them to the defendant, it should have been accepted by the court as conclusive on the question of quantity.

The remaining question is whether, where the memorandum of the sale does not state the date of the

delivery, it is competent to show by extrinsic evidence the date which the parties really intended. It is the settled law in this state that a memorandum of sale may be good under the statute of frauds, although it does not express the entire understanding of the parties, and that parol evidence may be resorted to for the purpose of helping out its deficiencies. *Lash v. Parlin*, 78 Mo. 391 ; *Greeley-Burnham Co. v. Capen*, 23 Mo. App. 301 ; *O'Neil v. Crain*, 67 Mo. 250. It has been held that parol evidence may be resorted to for the purpose of helping out such a memorandum as to so important a matter as the *price* to be paid for goods (*O'Neil v. Crain, supra*), and, from the reasoning of this court in *Greeley-Burnham Co. v. Capen, supra,* the same rule would seem to apply as to the time of delivery. In the absence of any understanding, the law would imply a reasonable time, depending on the situation of the parties ; or an express understanding as to the time might be shown.

Where other writings are appealed to for the purpose of helping out a defective memorandum of sale, they have usually been writings which have passed between the same parties as to the subject-matter. *Heideman v. Wolfstein*, 12 Mo. App. 366, and cases cited. But this is not necessarily so (*Moore v. Mountcastle*, 61 Mo. 424), provided the writing is one executed by the parties sought to be charged. In this case, the defendant had not been at all connected with the telegram from the plaintiff to the broker, which was received in evidence, against the defendant's objection, and we must reverse the judgment and remand the cause. It is so ordered. All the judges concur.