## WILLIAM T. MOORE, Respondent, v. WILLIAM B. THOMPSON, Appellant.

### St. Louis Court of Appeals, March 18, 1902.

1. **Contract: ASSIGNMENT OF: ASSENT OF PARTIES, WHEN IT MUST BE HAD.** When a contract is one of mutual confidence and for the performance of valuable services each party for the other, it is not assignable without the assent of both parties thereto.

2. **Statute of Frauds.** Under section 3418, Revised Statutes 1899, a contract not to be performed within a year comes within the statute of frauds.

3. ————. In the case at bar, the Ryan & Clarkson Dry Goods Company is the party to be charged with the performance of the contract, and while its agreement to be substituted as a party to the contract, is unilateral, its signature alone to the agreement is sufficient to take the case out of the statute of frauds, if the other party acted on it.

4. **Assignment: PROVABLE CLAIM.** A claim of unliquidated damages for breach by a lessee of his covenant may be proved and allowed before the lessee's general assignee as to the demand of a creditor, if the lease was made before the assignment, and the damages have matured in time for adjustment and allowance without prejudice to the winding up of the estate.

Appeal from St. Louis City Circuit Court.—*Hon. Walter B. Douglas,* Judge

AFFIRMED.

*R. E. Rombauer* and *Ford W. Thompson* for appellant.

(1) Rights, arising out of contract, coupled with liabilities, are not assignable; nor are contracts assignable that involve the relation of personal confidence, such that the party

Moore v. Thompson.

whose agreement conferred those rights must have intended them to be exercised only by him in whom he actually confided. Arkansas Valley Smelting Co. v. Belden Mining Co., 127 U. S. 379; Bothick's Admr. v. Purdy, 3 Mo. 82; Prather v. McEvoy, 8 Mo. 661; Boykins v. Campbell, 9 Mo. App. 495; Redheffer v. Leathe, 15 Mo. App. 12; Butts v. McMurry, 74 Mo. App. 526. (2) The assignment of a mere personal contract does not give the other contracting party the right to sue the assignee thereof for a breach thereof. Smith v. Kellogg, 46 Vt. 560. (3) Contracts not to be performed within one year from the making thereof must be in writing, signed by the party to be charged, or his agent thereunto lawfully authorized. The doctrine of part performance has no application to contracts of this character. R. S. 1899, sec. 3418; Sharp v. Rhiel, 55 Mo. 97; Johnson v. Reading, 36 Mo. App. 306; Nally v. Reading, 107 Mo. 350. (4) Respondent was a mere licensee at will of the dry goods company and his license was subject to be revoked at any time by it. Wood v. Leadbitter, 13 M. & W. 838; Desloge v. Pearce, 38 Mo. 599; Pitzman v. Boyce, 111 Mo. 392.

*Given Campbell* for respondent.

(1) The agreement of July 26, 1898, was a subletting or leasing to the plaintiff for the period of ten years, of the space mentioned in the agreement coupled with contracts as to the manner in which the business conducted by plaintiff in this space was to be carried on. (2) This lease and contract, by the acts of the corporation, Ryan-Clarkson Dry Goods Company and Wm. T. Moore, *inter sese,* and by the voluntary and express assumption thereof, by said corporation, became binding on said corporation. Christopher v. Brewery Co., 72 Mo. App. 197; Bless v. Jenkins, 129 Mo. 659, 660; Gray v. Rogers, 30 Mo. 261; Lindenbower v. Bentley,

Vol 93, app—22.

86 Mo. 515, 519. (3) Respondent was not, as appellant contends, a mere licensee; but regarding him as a mere licensee his license could not be revoked at the pleasure of the Ryan-Clarkson Dry Goods Company, because it was coupled with an interest, and labor and money had been expended on the faith thereof. 1 Washburn, Real Prop., pp. 549, 551; 18 Am. and Eng. Ency. of Law (2 Ed.), p. 1145; and numerous cases cited in note 6; Fuhr v. Dean, 26 Mo. 116; Baker v. Railroad, 57 Mo. 265; Allen v. Mansfield, 82 Mo. 688. (4) Since the agreement is not denied by appellant in his answer, and the defense of the statute of frauds is not pleaded, appellant can not at this time invoke the statute of frauds to defeat recovery. Royal Remedy & Extract Co. v. Gregory Grocery Co., 90 Mo. App. 53; Hillman v. Allen, 145 Mo. 638.

BLAND, P. J.—A commercial firm in the city of St. Louis, known as Ryan & Cannon and composed of M. I. Ryan, J. M. Cannon and George Murphy, on July 26, 1898, made the following contract with the plaintiff:

"We, the undersigned, Ryan & Cannon, agree to rent to W. T. Moore for shoe department space in 510-12 Washington avenue, for a period of ten years, beginning January 1, 1898.

"The space to be 58 feet 5 inches in length by 8 feet 9 inches in width.

"Shelving to run along west wall 58 feet 9 inches to west windows.

"Rent to be twenty-four hundred dollars per year, or forty-six dollars and sixteen cents per week, until sales of the department reach $50,000 per year, at which time said William T. Moore agrees to pay Ryan & Cannon seven and one-half per cent on all sales. Settlements to be made weekly for rent, and all freight and express charges paid by Ryan & Cannon in cash for W. T. Moore to be paid Thursday of each week.

"Advertising to be deducted the first week of each month —advertising to be figured on the actual number of lines used and ten per cent of the heading.

"Ryan & Cannon are to charge said W. T. Moore for advertising at the same rate as the St. Louis Globe-Democrat, St. Louis Republic, St. Louis Chronicle, St. Louis Post-Dispatch, St. Louis Star Newspaper Companies charge Ryan & Cannon.

"Said Ryan & Cannon agrees that said W. T. Moore may use for show windows the whole west window on Washington avenue, now divided into three parts, said window to be dressed by W. T. Moore.

"Ryan & Cannon further agree to set aside in one of the upper floors of 510-12 Washington avenue, enough space for duplicate and empty cases which the shoe department will need; also agree to furnish three cash carrier-baskets.

"Ryan & Cannon further agree to have cases in duplicate room the same day goods are received.

"They also agree to furnish all sale checks, exchange checks and address blanks, which are necessary to the business according to Ryan & Cannon's system.

"Ryan & Cannon further agree to furnish janitor and have said janitor to dust carpets every night; also night watchman.

"They also agree to display no less than four signs for each floor, directing customers to the shoe department.

"Ryan & Cannon also agree to be responsible for all packages after they leave the salesman.

"Ryan & Cannon further agree to stand good and pay said W. T. Moore for any shoes that said Ryan & Cannon should charge their customers, and vice versa.

"Fixtures to be put up by W. T. Moore at his expense.

"This contract to commence September 5, 1898, at which time Ryan & Cannon agree to have space for shoe department clear.

"All purchases for this department must be made in the name, and at the risk, of W. T. Moore.

"Ryan & Cannon will not be responsible for any of said W. T. Moore's purchases or contracts with other parties.

"Ryan & Cannon agree to furnish cashier, bundle wrappers, wrapping paper and twine, heat and elevator service; also agree to keep the shoe department as well lighted as space is at present.

"W. T. Moore to handle all leggings and over-gaiters.

"Catalogue space occupied in catalogue to be paid pro rata of cost and mailing; charge expressage on shoes prepaid on country orders pro rata of amount of order.

"All advertising must be submitted to Ryan & Cannon for approval, before being inserted in paper, and will be attended to by advertising manager.

"When parcels of shoes only are purchased, and are required to be sent to the depot, the charge of ten cents made by the package room employees at the railroad station will be paid by W. T. Moore.

"Our regular deliveries being very ample, all packages to be sent 'special' must first have the O. K. of our superintendent before being promised to the customer.

"The department is to be known as the Ryan & Cannon Shoe Dept., and shoes will be so stamped; likewise the cartons.

"The help employed by this department must at all times be satisfactory to Ryan & Cannon, and in cases where the taking back of goods, or allowances for any cause are referred to Ryan & Cannon, Ryan & Cannon must have the right of final decision."

Plaintiff went into possession of the rented space in the store of Ryan & Cannon and paid the rent and all the terms of the contract were carried out by both parties thereto until about the sixteenth of November, 1898, when Cannon sold his interest in the firm to Murphy. This partnership continued

until January 14, 1899, on which date the partnership, business and assets were sold to the Ryan-Clarkson Dry Goods Company, a corporation. The corporation took possession of the premises formerly occupied by Ryan & Cannon and continued the business until December 16, 1899, when the corporation executed a deed of trust to W. B. Thompson for the benefit of creditors. The deed of trust, after specifying numerous creditors, contained the following clause:

"This conveyance is intended to be for the benefit of every creditor of the said party of the first part herein, and if any such creditor is not mentioned in this instrument such omission occurred by oversight, it being the intent and purpose of this conveyance that all of the creditors of said party of the first part shall share in equal proportions in the assets of said corporation when the same are distributed according to the provisions of this instrument."

Thompson, the trustee, on December 16, 1899, took possession of the property, and a short time afterwards handed to plaintiff the following instrument for his signature, to-wit:

"Whereas W. T. Moore is in possession of a certain part of premises known as 510-12 Washington avenue, in the city of St. Louis, and heretofore occupied by the Ryan-Clarkson Dry Goods Company, and has been paying to the Ryan Clarkson D. G. Co., for such space at the rate of $46.16 per week, including light, delivery, and cashier's service. Whereas he desires to continue in possession of said space and secure the cashier's delivery and heat service during the occupancy of the premises by W. B. Thompson, trustee for the creditors of the Ryan-Clarkson D. G. Co. Whereas the said trustee is willing to permit the said service without binding him, the said trustee, or the assets of said Ryan-Clarkson D. G. Co., by reason of the continuance of said service. Now, therefore, the undersigned, William T. Moore, does hereby agree without prejudice to any of the rights of the creditors of the Ryan-Clarkson D. G. Co., or without any personal responsibility on

the part of the trustee to permit the said trustee to continue the said service until such time as said trustee shall terminate the said service. And said Moore does hereby agree that any payment made to him of the daily receipts of said service, shall in no manner bind the said trustee, or shall in manner prejudice any of the rights of the said creditors of the Ryan-Clarkson D. G. Co., by reason of such continued service. And it is further agreed that a settlement of such service shall be made daily, and the receipts signed by the said Moore.

"In witness whereof said W. T. Moore has hereunto set his hand this nineteenth day of December, 1899."

The plaintiff refused to sign this paper, whereupon Thompson refused to let him have the use of his cashier, refused to handle his bundles and refused to carry out the provisions of the contract made with the firm of Ryan & Cannon. Moore then furnished his own cashier, handled his own cash and supplied his own wrapping paper until the twenty-fourth day of December, 1899, when the trustee closed the store for the purpose of taking stock and never reopened it. Thompson, as trustee sold the store to Max Shultz Dry Goods Company, who refused to let plaintiff remain in the establishment and, being unable to secure other quarters in a department store, he was unable to carry on his shoe business and was compelled to sell his stock of merchandise at a loss of eight hundred dollars.

When plaintiff rented the space from Ryan & Cannon he put in shelving, furniture and fixtures and testified that his loss on these was about three hundred and twenty dollars and that the unexpired term of his lease was worth five thousand dollars.

Thompson, the trustee, has retained and withheld funds in his hands, under an agreement dated July 3, 1900, made between himself, Moore and others, sufficient to meet the claim of plaintiff in this case.

Moore v. Thompson.

A few days before the formation of the corporation, the Ryan-Clarkson Dry Goods Company, plaintiff was informed of the fact that this corporation would buy out Ryan & Cannon and was asked if he would sign an agreement substituting the corporation in the place of Ryan & Cannon in his contract. Plaintiff stated that he would not at that time either refuse or consent to such an agreement.

After the Ryan-Clarkson Dry Goods Company took charge of the business, the following letter was addressed to plaintiff:

"St. Louis, Mo., January 20, 1899.

"Mr. W. T. Moore, City.

"Dear Sir: We beg to notify you that we have assumed all leases and contracts of the firm of Ryan & Cannon and their successors, and have had them all transferred to us, and duly signed, sealed and recorded, and we beg to notify you that we shall execute your contract in every respect.

"Yours truly,

(Signed.) "RYAN & CLARKSON DRY GOODS CO.

"By M. I. RYAN, President."

Plaintiff received this letter but did not answer it in writing or verbally, but after the corporation took charge, it and Moore continued to act upon and carry out all the terms and provisions of the contract with Ryan & Cannon until Wm. B. Thompson took possession as trustee for the benefit of creditors.

On January 13, 1899, O'Neill Ryan, plaintiff's attorney, wrote the following letter:

"St. Louis, Mo., Jan. 13, 1899.

"M. I. Ryan, Esq.,

"Care Ryan & Cannon,

"Broadway & Washington Ave., City.

"Dear Sir: I am directed by my client, Mr. W. T. Moore, to advise you that it is his purpose to hold you and the

other persons who composed the firm of Ryan & Cannon responsible for the damages he has sustained and will sustain by reason of the breach of contract between him and the said firm of date July 26, 1898, as the dissolution of said firm and the course pursued since then in the conduct of the business carried on at Broadway & Washington avenue, as well as the course Mr. Moore is advised is intended to be pursued in connection with the business to be conducted at said place, has entailed and will hereafter entail heavy losses upon him and in some respects cause him irreparable damages.

"It is not our client's desire to enter into litigation, but I am instructed unless some satisfactory arrangement is made to take such proceedings at law or equity as may be necessary to assert and protect his rights.

"Yours truly,

"O'Neill Ryan."

M. I. Ryan, president of the Ryan-Clarkson Dry Goods Company, testified that after the corporation went into possession he repeatedly requested Moore to accept the corporation as lessor of the space he occupied in the store and that Moore refused to do anything; that finally about the first part of February he said to Moore, "I am going to New York, and you have got either to say one thing or the other, either fish or cut bait, go to work and accept the new contract, or we will get somebody to buy you out." That Moore did not say anything one way or the other; that he got a shoe man and took him to the premises with a view of leasing him the space occupied by Moore but he did not say anything to Moore about it.

Moore in rebuttal testified that he never had any such conversation with Ryan; that Ryan did speak to him at one time about getting a man to buy him out; that he told Ryan that he was going to stay where he was and hold on to his lease; that Ryan never brought any one there to buy him out.

It is admitted that Ryan and Clarkson are insolvent and

that the assets in the hands of Thompson are not sufficient to pay the debts of the corporation in full.

The evidence is also that plaintiff was not informed of the formation of the partnership of Ryan & Murphy as successors of Ryan & Cannon until after this suit was brought.

The following is the decree:

"This cause came on to be heard before the circuit court of the city of St. Louis, in division No. 6, thereof, Hon. Walter B. Douglas, judge of said division presiding, on the ———— day of ———— A. D. 1901, plaintiff and defendant both being represented by counsel, and the court having heard the evidence and considered the pleadings, and all matters submitted to the court, doth find that the contract of lease of July 26, 1898, in evidence before the court and admitted by the pleadings, by mean assignments and by the action of the parties thereto, became binding on Ryan & Murphy, successors to Ryan & Cannon, parties to said contract, and upon the Ryan-Clarkson Dry Goods Company, a corporation of the city of St. Louis, Missouri, and that said Ryan-Clarkson Dry Goods Company assumed the contracts and were the successors of the firm of Ryan & Murphy, and that said contract was acted upon by said dry goods company, and said plaintiff, and all its terms and provisions carried out and was binding on the said parties.

"And the court further finds that plaintiff relying on said contract established a retail shoe business in the premises described in the said contract and incurred expenses in fitting up the space described in the contract for the retail shoe business, and that the parties in all things carried out said contract until the sixteenth day of December, 1899, when said dry goods company conveyed its store, premises and stock to William B. Thompson, trustee, for the benefit of all of their creditors.

"And the court finds that said Thompson, trustee, refused to recognize the rights of the plaintiff under said contract of lease, and closed up the store and shut him out from the further enjoyment of his ten-year contract; that plaintiff incurred

losses and damages by reason of the action of said Ryan-Clarkson Dry Goods Company in transferring its property to said Thompson, trustee, and in a greater amount than two thousand dollars.

"And the court doth further find that defendant, William B. Thompson, trustee, has a special fund of two thousand dollars in his hands to cover the claim of this plaintiff should his claim be established by a judgment of the court.

"And the court doth further find that said plaintiff is a creditor of said Ryan-Clarkson Dry Goods Company, and has established his claim in the said sum of two thousand dollars.

"Wherefore, the court doth order, adjudge and decree that the plaintiff's said claim of two thousand dollars is chargeable against the estate of said Ryan-Clarkson Dry Goods Company, in the hands of said William B. Thompson, trustee, defendant herein, with the same effect as if the same had been expressly recited in said trust deed of December 16, 1899.

"It is further ordered that plaintiff recover his costs herein expended of defendant."

The defendant duly excepted to this decree and in due time filed his motions for rehearing and new trial, and in arrest, which motions were by the court overruled; thereupon defendant perfected his appeal.

The assignment of errors by appellant is,

"1.   The finding and judgment of the court are against the evidence.

"2.   The judgment of the court on the facts found is erroneous.

"3.   The judgment of the court is excessive.

"4.   The judgment is against equity.

"5.   The court erred in overruling defendant's motion for new trial.

"6. The court erred in overruling defendant's motion in arrest of judgment."

I. The contract sued on was not assignable without the assent of both parties thereto for the reason that it was one of mutual confidence and for the performance of valuable services each for the other. Hardy Implement Company v. Iron Works, 129 Mo. 222; Lansden et al. v. McCarthy, 45 Mo. 106; Butts v. McMurry, 74 Mo. App. 526; Arkansas Valley Smelting Co. v. Belden Mining Co., 127 U. S. 379.

The contention of defendant is that plaintiff refused to assent to the assignment by Ryan & Cannon to the Ryan-Clarkson Dry Goods Company and, hence, the latter company was not bound to perform the contract and is not liable to Moore for any breach thereof. Moore at no time expressly assented to the assignment, verbally or by writing. His principal objection, it seems, to entering into the new arrangement when he was asked to do so by Thompson, was that his shoes were branded "Ryan & Cannon" and that a change in the name of the business would entail upon him a considerable expense in re-branding his shoes. He did not, at that time, refuse to give his assent to the substitution, but took the matter under advisement.

The letter of O'Neill Ryan, Moore's attorney, of January 13, addressed to M. I. Ryan, expressed the intention of Moore to hold the firm of Ryan & Cannon on the contract unless some satisfactory arrangement was made. It does not appear from the evidence that any notice was taken of this letter by Ryan & Cannon or that the Ryan-Clarkson Dry Goods Company's attention was called to it, either before or after it went into possession of the store. Subsequent to the interview with Thompson, and after the letter of O'Neill Ryan, came the letter of the Ryan-Clarkson Dry Goods Company of January 20, addressed to Moore, in which he was informed that the corporation had assumed the performance of his contract with Ryan & Cannon and that it had been transferred to it duly

"signed, sealed and recorded," with the assurance that the corporation would execute the contract in every respect. After this letter was received by Moore, the uncontradicted evidence is that both he and the Ryan-Clarkson Dry Goods Company did keep and perform every condition of the contract until Thompson took possession as trustee and turned Moore out. This letter called for a prompt rejection of its proposals if Moore did not intend to accept the substitution of the Ryan-Clarkson Dry Goods Company for Ryan & Cannon as a party to the contract. He made no such rejection, but, on the contrary, by his conduct it appears that he accepted the substitution, continued in the possession of the premises and carried out his part of the contract with the Ryan-Clarkson Dry Goods Company so long as he was permitted to do so, and we think the learned circuit judge was warranted by this evidence in finding that both Moore and the Ryan-Clarkson Dry Goods Company acted upon the contract and carried out all of its terms, and that there was a substitution of the Ryan-Clarkson Dry Goods Company for Ryan & Cannon as a party to the contract by the assent of Moore, unless, as contended for by defendant, the acceptance by Moore, of the substitution, to bind the Ryan-Clarkson Dry Goods Company, had to be in writing. The contract was not to be performed within a year and comes within the statute of frauds. Sec. 3418, R. S. 1899.

The assignment of the contract to the Ryan-Clarkson Dry Goods Company was in writing and its promise to Moore to perform the conditions of the contract was also in writing. See letter of January 20, 1899. The Ryan-Clarkson Dry Goods Company is the party to be charged with the performance of the contract, and while its agreement to be substituted as a party to the contract is unilateral, its signature alone to the agreement is sufficient to take the case out of the statute of frauds, if the other party acted on it. Mastin v. Grimes, 88 Mo. 478; Cunningham v. Williams, 43 Mo. App. 629; Warren v. Castello, 109 Mo. l. c. 343.

II. The transfer of the establishment by the Ryan-Clarkson Dry Goods Company to Thompson, trustee, was a breach of the contract and forced the removal of Moore from the premises, resulting, according to the undisputed evidence, in loss on his goods and fixtures and a still greater loss in the value of his right to keep the space in the building and carry on his business for the unexpired term of his lease. These damages are unliquidated but Moore is, nevertheless, a creditor of the Ryan-Clarkson Dry Goods Company (Hoyle v. Scudder, 32 Mo. App. 372; Reading Iron Works—Sweetman's appeal, 150 Pa. St. 369; Potts v. Rose Valley Mills, 167 Pa. St. 310; Kalkoff v. Nelson, 60 Minn. 284), and is entitled to recover the damages he has sustained. The trial court found that these damages were in excess of the sum sued for ($2,000), and we think the evidence abundantly supports the finding and affirm the judgment. *Barclay* and *Goode, JJ.,* concur.