LIZZIE E. WOOSTER

v.

CRANE & COMPANY, a corporation.

[Decided May 31st, 1907.]

1. Contracts to publish school books between the author and a New Jersey corporation, providing that they should extend during the continuance of the copyrights and of any renewals thereof, and that the publisher was to keep an account of the sales and render the same every six months and pay to the author a certain percentage of the sales, were not assignable, without the consent of the author, to an Arizona corpo-

ration, though the personnel of the latter corporation was the same as that of the former, with the exception of the local stockholder and director whom the statute of New Jersey requires to live in that state.

2. Contracts to publish school books between the author and a corporation engaged in the publication of books, its successors and assigns, providing that the corporation should have the exclusive right to publish the books, that the corporation, its representatives and assigns, should in good faith keep their agreement therein contained, and that it should publish the books and pay the publisher a stated percentage of the receipts as royalties, were not, by their terms, assignable.

On final hearing on bill, answer and proofs.

*Mr. Frank P. McDermott* and *Mr. William R. Spooner* (of New York), for the complainant.

*Mr. Osiris D. McConnell* and *Mr. Quinton* (of Kansas), for the defendant.

PITNEY, ADVISORY MASTER.

The object of this bill is to rescind certain contracts entered into in the early part of the year 1900, between the complainant, Miss Wooster, the author of certain school books, and the defendant, Crane & Company, a corporation of New Jersey, a publishing and printing company of Topeka, Kansas, and also for an accounting between the parties and for other relief.

The ground on which the rescission is asked is threefold.

*First.* That the contracts themselves were *ultra vires* the corporation, because not within the scope of its powers as stated in its articles of association.

*Second.* Because the corporation has itself, of its own motion, been dissolved strictly in accordance with our statute providing for dissolution and thereby became incapable of fulfilling the contracts, which by their terms and in their nature were continuous and extended over the life of the copyright of the complainant in the school books of which she was the authoress.

The defence denies that the publishing of school books was not within the scope of its articles of incorporation. I have not found it necessary to consider that point.

As to the second point made by complainant, defendant admits

that it was, in the year 1905, duly dissolved by proper and sufficient proceedings under our statute for that purpose. But it avers that the same stockholders who owned and controlled the stock in the New Jersey corporation were, at or about the date of its dissolution, organized into a corporation bearing the same name under the laws of Arizona, and all its property, plant and contracts, including those between the complainant and the defendant, were assigned and transferred to the new company, which thereby succeeded to all the rights of the old company under the contracts with the complainant and which is ready and willing to carry out and perform the same.

The complainant sets up a third cause for rescission in an alleged non-performance by the defendant of its part of the contracts in failing to print and publish a part of the works therein mentioned as by its contract it had undertaken to do.

To this part of the complainant's case the defendant sets up that the non-performance by the defendant was due to non-performance by the complainant in failure to furnish copy for the printer. And it alleges in its answer that this question was litigated between the parties in a suit in the Kansas courts, brought by the present complainant against the present defendant in 1902, in which the same grounds the complainant takes herein for rescission (with the exception of that of the dissolution of the defendant) were taken and put in issue, and decided against the complainant and an accounting between the parties was had up to April 15th, 1903, and a judgment rendered in favor of the defendant against the complainant for $1,252.

Turning, now, to the second ground of complainant's relief of rescission, based on the dissolution of the defendant, we find that the fifty-third section of the Corporation act of 1902, which is a re-enactment of the previous statute (*Gen. Stat. p. 918 § 59*), provides that when corporations are dissolved by any means, they are continued bodies corporate for the purpose of prosecuting and defending suits and of enabling them to settle and close their affairs, to dispose of and convey their property and to divide their capital, "but not for the purpose of continuing the business for which they were established."

The defendant herein is a New Jersey corporation, and jurisdiction was obtained over it as such by service in that state, and this suit was prosecuted under that section of the act.

The power, then, of the defendant to assign these contracts to the Arizona corporation is undoubted. But the question is whether, from the nature of the contracts themselves, the defendant could empower the new corporation to take its place in the contracts against the will and without the consent of the complainant, the other party to the contract.

That question depends upon the character of the contracts themselves. Mr. Pollock, in his work on *Contracts,* says, at page 411:

"Rights arising out of a contract cannot be transferred if they are coupled with *liabilities* or if they involve a relation of *personal confidence,* such as that the party whose agreement conferred those rights must have intended them to be exercised only by him in whom he actually confided,"

and he cites the case of

"a partner who has no power to force a new partner on the other members of the firm without their consent; all he can give to an assignee is a right to receive what may be due to the assignor on a balance of the partnership accounts."

These are familiar and fundamental principles, and, independent of the question of personal character, qualification, &c., of the proposed substituted contractor, there intervenes the qualification mentioned by Mr. Pollock, namely, the question of *liability,* where the question of financial responsibility alone is involved. Thus if A agrees to deliver to B, at a certain point, a certain quantity of any commodity, at a certain price at stated times in the future, and to take B's promissory note at three months for the price, manifestly B cannot assign that contract to C and compel A to take C's promissory note instead of B's, for which he had contracted.

Now, if we turn to the contracts here in question we find that they provide for the publication of certain school books by the defendant, on certain terms, among which is that the contracts

extend during the life of the copyright not yet expired and of any renewal thereof, and that the defendant is to keep an account of the sales and render such account every six months during that period and to pay the complainant a certain percentage of the sales every six months. Here, then, comes in directly the question of pecuniary responsibility.

The defendant, by its answer, sets up that the personnel of the new company (with the exception of the local stockholder and director which, by our statute, it is obliged to keep in New Jersey) is precisely the same as that of the present defendant and that the new company is performing the contracts in all respects and is able and willing to continue to perform them, and it asserts that condition as a complete answer to the cases cited by the complainant. But does that condition cover the question of pecuniary responsibility? The complainant contracted with a corporation organized under the laws of the State of New Jersey, whose solvency and pecuniary responsibility is protected and maintained by all the safeguards found in our statute for that purpose, and she is entitled, both at law and in equity, to the benefit of the continuation of those safeguards. We are not shown what the provisions in that respect are as found in the Arizona statute. But it is significant that the defendant in its answer gives as a reason for its dissolution and reorganization in Arizona, among other things, that the laws of Arizona do not require that one of the directors should reside within Arizona, nor are corporations organized there required to make annual reports to the extent required in this state, and it avers that it is more convenient and less expensive to carry on business under an Arizona corporation than under a New Jersey corporation.

Another consideration comes in here. Complainant is entitled, under her contracts with this defendant, to have, in a measure, the protection of the courts of New Jersey, and she may have and probably has more confidence in those courts, to say nothing of a greater convenience in access than in the courts of Arizona.

It cannot, of course, be and was not contended that the Arizona corporation was the same legal entity as the New Jersey corporation. The mere fact that the ultimate property rights rest in the

same stockholders cannot, for present purposes, make the legal entity identical.

The authorities on this, the main question, are uniform and clear. *Stevens* v. *Benning, 1 Kay & J. 168 (1855),* and on appeal, *6 De G. M. & G. 223; 24 L. J. Ch. 153.; 1 Jur. (N. S.) 74;* where the opinion of Vice-Chancellor Wood in the lower court is given.

That was the case of the publication of Forsyth on the *Law of Composition with Creditors,* and the language used by Vice-Chancellor Wood in determining the case is important. I will not repeat it here. The effort of the counsel for the assignee in that case was to show that the result of the original contract was to assign the copyright of the book, and it was hardly contended that if it was not so assigned the assignment by the original publisher to the assignee gave the latter any legal standing.

Another case is *Humble* v. *Hunter, 12 Adol. & E. (Q. B.) 310 (1848).* That was an action by the owner of a vessel on a charter party which was signed on behalf of the owner and plaintiff by her son, calling himself "the owner." And it was held that she could not recover because the son had represented himself as the owner. Lord Denman, in delivering judgment, said: "You have a right to the benefit you contemplate from the character and credit and substance of the party with whom you contract."

*Stevens* v. *Benning, supra,* was followed and adhered to by Justice Fry, in *Hole* v. *Bradbury, 12 Ch. Div. 886 (1879).*

Coming to the United States we find the very important case of *Arkansas Smelting Co.* v. *The Beldon Company, 127 U. S. 379,* which was argued with great ability and fullness and complete examination of the authorities on the side which corresponds to that of the defendant here.

In that case the Beldon company had agreed to sell and deliver to a firm of Billing & Eilers, at their smelting works in Leadville, Colorado, ten thousand tons of lead ore from its mines, delivered at the rate of fifty tons a day, with a clause—"all ore so delivered shall at once upon delivering become the property of the party of the second part, Billing & Eilers." Then there was a provision for ascertaining by assay of samples the value of

the ore so delivered and the price to be fixed after the sampling by the price of lead in New York. Billing & Eilers dissolved and their smelting works, where delivery was to be made, and their contract, was assigned and conveyed to the plaintiff. Beldon & Company thereafter refused to deliver ore to the assignee, whereupon the plaintiff brought suit. Defendants demurred; the demurrer was sustained and the plaintiffs brought a writ of error. No one appeared for defendant at the hearing in the supreme court and the judgment below was sustained in an opinion by Mr. Justice Gray, on the ground that the original vendors of the ore were not obliged to take the successors of Billing & Eilers as their debtors, although they had succeeded to the very same smelting works and business which Billing & Eilers originally carried on.

One of the cases cited by Mr. Justice Gray is *Winchester* v. *Howard, 97 Mass. 203.* There the owner of a pair of oxen put them in the hands of an agent for sale. The agent sold them to a purchaser upon the representation that the oxen belonged to him, and they were delivered to the purchaser. When he ascertained that they belonged to another party, he refused to complete the contract. The court held he was justified therein, and after citing the language of Lord Denman, above quoted, the court proceeds: "There may be good reasons why one should be unwilling to buy a pair of oxen that had been owned or used or were trained by a particular person or why he should be unwilling to have any dealings with that person."

Another important case is *Boston Ice Co.* v. *Potter, 123 Mass. 28 (1877).* The headnote is this:

"A, who had bought ice of B, ceased to take it on account of dissatisfaction with B and contracted for ice with C. Subsequently B bought C's business and delivered ice to A, without notifying him of his purchase until after the delivery and consumption of the ice. *Held*, that B could not maintain an action for the price of the ice against A."

The time during which the plaintiff had supplied ice to defendant was a whole year. In delivering judgment, Justice Endicott said: "A party has a right to select and determine with whom he will contract and cannot have another person thrust upon him

without his consent." The opinion contains quite a full citation of authorities.

In *Randall* v. *Chubb, 46 Mich. 311*, and *Lewis* v. *Sheldon, 103 Mich. 102*, a lessee of a farm on shares attempted to assign the lease and failed. There evidently the lessor relied on the personal quality and character of the lessee on shares.

In *Lansden* v. *McCarthy, 45 Mo. 106*, a coach maker, who had a secret partner unknown to the other party, contracted to furnish McCarthy a carriage for use for the term of five years at a given price per year, payable in advance. At the end of three years the coach maker assigned the contract to his secret partner. It was held that McCarthy was not obliged to continue the contract with the assignee. In other words, he was not obliged to pay a stranger in advance for the use of the carriage, nor was he obliged to deal with the stranger in any way.

It seems to me that these principles, thus illustrated by adjudged cases, are conclusive in favor of the complainant and I must advise a decree rescinding the contract, unless another point made by the defendant has some substance, viz., that the contracts in question by their terms are made assignable.

One contract, dated the 19th day of February, 1900, is expressed to be between Lizzie E. Wooster and Crane & Company and their successors and assigns, a corporation, Shawnee county, State of Kansas. Then after recitals is this clause:

"therefore this agreement witnesseth that the said Lizzie E. Wooster, having full power to make this grant, hereby agrees that the said Crane & Company have the exclusive right to publish and print the said books or any revised edition thereof during the full term of copyright thereof and during the full term or terms of any renewals of said copyright."

Then Miss Wooster agrees to defend the copyright and to bear the cost of illustration and metal plates, and Crane & Company have the right to sell editions or duplicate plates in foreign countries and the contract proceeds:

"The above agreements are made with the understanding that the said Crane & Company and their representatives and assigns shall in substantial good faith keep and perform their agreement hereinafter contained."

Then follows the covenants on the part of Crane & Company that they will publish the books and pay Miss Wooster ten per cent. of the cash receipts as royalties and will render semi-annual statements.

The next agreement is that of the 15th of March, 1900, in which the parties are described as in the previous contract, and then, after a recital of the books, Miss Wooster agrees that Crane & Company shall have the exclusive right to publish and print the said books or any revised edition thereof during the full term of the copyright thereof, and during the full term and terms of any and all renewals of said copyright. Then like the previously recited agreement, there is a clause that these agreements are made with the understanding that Crane & Company and their legal representative and assigns shall keep and perform that agreement. Then comes the contract by Crane & Company to publish and pay royalties, &c.

Upon careful consideration I am unable to give to the presence of the word "assigns," as above quoted, the force the defendant claims for it. I am unable to construe it as a contract on the part of Miss Wooster to deal with anybody to whom Crane & Company may assign that contract and to accept such assignee as paymaster. It will be observed that wherever there is a covenant on the part of Crane & Company to do anything on its part, the weight of the covenant is placed entirely upon Crane & Company. Upon the whole I am of the opinion that the only effect of the word "assigns" is to give the right which Crane & Company have without that word, viz., that their assignee would take whatever interest they had in the contract up to the time of the assignment, precisely as in the case of one partner selling out his interest in the partnership.

The result is that I think that the complainant is entitled to a decree of rescission.

It is unnecessary at this time to inquire how far the new corporation, Crane & Company, which is not a party to this suit, is bound by this decree.

I have so far assumed that such new corporation has a legal existence. But such existence was earnestly denied by complainant. The defendant, by its answer and as a part of its defence,

alleged its legal existence, and hence the burthen was on the defendant to prove it by competent evidence. The case is not one where the mere fact that it is acting as such is sufficient. The *de facto* doctrine does not apply. In support of this burthen the defendant introduced a properly attested copy of articles of association of the stockholders of the defendant corporation (excepting the New Jersey director), on file in a public office in Arizona, but did not offer any proof of the laws of Arizona entitling such filing or declaring that the result thereof was to create a corporation. Seasonable objection was taken to the document without such proof. I have grave doubts whether the proof thus made was sufficient to establish the legal existence of the new corporation. Of course every corporation owes its existence to statutory law. But I do not find it necessary to determine this question here. The result is the same whatever may be the proper view of the question.

The other prayer of the bill is for an accounting. The accounting is prayed for only from the month of April, 1903. The defendant has annexed to its answer what it affirms is an account of the profits and royalties due to Miss Wooster since that time, amounting to $1,203.28, up to October 1st, 1906, the answer having been filed on the 23d of October, 1906. Complainant complains that the account is not complete. As the complainant is entitled to have the account brought down to date, and as the matter must go before a master, an opportunity will there be given to except to the account and have it thoroughly examined.

The important question is as to that part of the answer which sets up that in a litigation between the parties in a Kansas court the defendant here obtained a decree against the complainant for the sum of $1,252.39, besides costs, and it claims the right to apply all royalties due to the complainant under the contract between them to the payment of that judgment.

At the hearing the defendant attempted to sustain that decree by what purported to be a copy of certain enrolled proceedings in the Kansas court. The complainant's counsel objected to the certification of that document for certain reasons not necessary now to be stated. I have examined the certificate and the objections made and come to the conclusion that I ought not to rely

upon it or admit it in evidence, and I at once notified the parties that they might correct that defect or at least apply for leave for that purpose.

The result is that the reference to the master should preserve leave to the defendant to make proper proof of the judgment before the master.

It may be well to add that, as I have stated above, the complainant relied as one ground upon which she based her prayer for rescission that defendant had failed to perform its contract by printing and publishing two volumes of her reader.

The defendant set up that by this litigation before mentioned that very question had been involved and passed upon by the court, and that it had been decided that the complainant and not the defendant was at fault that the last volumes were not printed. A large amount of evidence was gone into on both sides on this question, but I have not considered it, since I found the point of change of party to the contract a clear ground for rescission.

The answer and the evidence disclose other matters in litigation between the parties, both in the state and the federal courts, which show that it is highly improbable that it is practicable for them to maintain to each other those relations which should exist between author and publisher.