GEORGE W. RIDDLE and R. E. DEES, co-partners as BERNIE LUMBER COMPANY, Appellants, v. GEORGE CASTNER, Respondent.

Springfield Court of Appeals, January 18, 1919.

1. **CONTRACTS: Construction: Intention.** Construction of contract is controlled by intention of parties as appears from language of whole instrument.

2. ————: **Sale: Mutuality.** Contract of sale of corn "to be delivered at option of Bernie Lumber Company from this date to March 1, 1917," *held* not unilateral.

3. ————: ————: ————: **Statute of Frauds.** Contract of sale of personalty was not rendered unilateral by fact that it was only signed by seller, and that purchaser could defeat enforcement by interposing Statute of Frauds.

4. **FRAUDS, STATUTE OF: Memorandum: Who Must Sign: Party.** Under Revised Statutes 1909, section 2784, a contract of sale of personalty need not be signed by both parties, notwithstanding the use of the word "parties" in the statute.

5. **ALTERATION OF INSTRUMENTS: Materiality: Signature.** A memorandum of contract of sale of personalty signed by seller was not materially altered so as to require its exclusion when offered as evidence, where buyer subsequently indorsed thereon that it was accepted, and signed such indorsement; seller's rights

not being affected in any way, except that buyer could not there-
after set up Statute of Frauds.

6. **FRAUDS, STATUTE OF:** Memorandum: Time of Making.  Where
contract of sale of personalty is oral, a memorandum thereof,
signed by party to be charged, as required by Revised Statutes
1909, section 2784, in order to make the contract enforceable against
that party, need not be made at the time of sale.

7. ——: Separate Writings.  A memorandum of a sale of personalty
need not be all on one paper, under the Statute of Frauds (Rev.
St. 1909, sec. 2784).

8. **SALES:** Breach of Contract to Deliver:  Measure of Damages.
Damages for breach of a contract on part of the seller to deliver
corn at option of purchaser from date of sale to a certain other
date is difference between price on day purchaser demands de-
livery and the contract price.

9. **APPEAL AND ERROR:** Matters Reviewable: Discretion of Trial
Court.  Where there is nothing in record that indicates that trial
court granted a new trial on any ground within the court's discre-
tion, it must be concluded that trial court acted from some er-
roneous conclusion of law; the record showing no error occur-
ring on trial.

Appeal from Stoddard County Circuit Court.—*Hon.
W. S. C. Walker,* Judge.

REVERSED AND REMANDED (*with directions*).

*Edmonds & Shaw* for appellant.

*J. L. Fort* for respondent.

BRADLEY, J.—Action by plaintiffs, who were
engaged in buying and selling corn, for breach of con-
tract.  Plaintiffs recovered upon trial before the court
and a jury.  Motion for new trial was sustained, and
plaintiffs appealed.

The petition charges that defendant on October 17,
1916, sold plaintiffs seven hundred and fifty bushels
of corn at seventy-five cents per bushel, to be delivered
at the option of plaintiffs from October 17, 1916, to
March 1, 1917; charges that a demand had been made
for the corn, and that defendant refused to deliver to

plaintiffs' damage. The answer denied making the contract described in the petition, and then: "Further answering defendant avers that neither the plaintiff Geo. W. Riddle, or plaintiff D. E. Dees or plaintiff Bernice Lumber Company at any time accepted any part of the corn alleged in their petition to have been sold to them by defendant, nor did either of said parties ever actually receive any part of the corn alleged to have been sold to them by the defendant, nor did either of said parties ever give defendant anything in earnest to bind any bargain or sale of corn by the defendant to plaintiffs, nor did either of the plaintiffs ever pay the defendant anything for any corn sold by defendant to plaintiff, nor was there at any time any note or memorandum in writing made of the bargain or sale of any corn by defendant to plaintiffs and *signed by the defendant and plaintiffs,* or signed by the agents of defendant and plaintiffs lawfully authorized." October 17, 1916, defendant signed the following: "Contract. Bernie, Missouri, 10/17-16. I (have) hereby sold to the Bernie Lumber Company of Bernie, Mo., 750 bu. good dry No. 2 corn, snapped or shucked; 70 lbs. to bu. shucked corn, and 75 lbs. snapped corn at 75 cents per bu. f. o. b. cars, Bernie, Mo., to be delivered at option of Bernie Lumber Company, from this date to March 1, 1917. George Castner."

Defendant failed to deliver any corn, and plaintiffs brought this suit. Defendant contends: (1) That the contract was unilateral, and did not bind plaintiffs to accept the corn though he offered to deliver it; (2) that the memorandum of the contract was materially altered without his knowledge and consent, after he signed it, and was thereby rendered void.

The trial court assigned no reasons for granting a new trial, and hence its action should be sustained, if it can be, upon consideration of the whole record.

The memorandum of the contract signed by defendant was as appears, supra. The contention that there was no mutuality of obligation is based upon the con-

struction of the language: "To be delivered at option of Bernie Lumber Company, from this date to March 1, 1917." Defendant urges that this language gave plaintiffs the option of accepting or not accepting the corn. The construction of a contract is controlled by the intention of the parties as appears from the language of the whole instrument. [La Crosse Lumber Company v. Schwartz, 163 Mo. App. 659, 147 S. W. 501; Good v. Erker, 170 Mo. App. 681, 153 S. W. 566.] Independent of anything outside the memorandum tending to show how the parties construed it, we think that the language itself is susceptible of but one reasonable construction, and that is that plaintiffs, so far as the contract or memorandum thereof as it was originally, was concerned, would be bound to accept if defendant offered to deliver, unless they interposed the Statute of Frauds. But this would go only to defeat enforcement of the mutual obligation and would not be a reason for saying there was no mutual obligation.

When the contract was entered into, and the memorandum drawn up, plaintiffs did not sign the memorandum, but did later.

The only question in determining as to the mutuality of obligation, is the construction of the option reference. If the option *refers* to the *delivery* and qualifies that term, then defendant's construction is correct, because if plaintiffs might accept or not at their own will then they were not *bound* to do anything, and mutuality of obligation would be lacking.

In considering the question of mutuality we do not consider that the Statute of Frauds when the contract was entered into would bar defendant from proceeding against plaintiffs should they refuse to accept, because a contract within the statute (Section 2784, R. S. 1909) is enforceable only against the party or parties who sign the memorandum, unless taken out of the statute on some other ground, and no distinction is made whether the section reads "*party* to be charged" or "*parties* to be charged." [Cunningham v. Williams,

43 Mo. App. 629; Elliott on Contracts, sec. 1319; Moore v. Thompson, 93 Mo. App. 336, 67 S. W. 680.] And while under a different section the following cases are analogous. [Mastin v. Grimes, 88 Mo. 478; Real Estate Company v. Spelbrink, 211 Mo. 692, 111 S. W. 480; Tracy v. Berrige, 180 Mo. App. l. c. 225, 167 S. W. 1176; Carter v. Timber Company, 184 Mo. App. l. c. 528, 170 S. W. 4445.] In Elliott on Contracts, sec. 1319, supra, it is said: "While there are a few early cases that suggested that a distinction might exist, it is now uniformly held that there is no difference between the fourth and seventeenth sections of the statute caused by the use of the word 'party' in the fourth section and the plural 'parties' in the seventeenth section. It is not necessary that both parties sign the agreement. In the absence of any special provisions in local statutes, the memorandum need be signed only by the party 'to be charged,' that is to say, the party who is to be bound or held chargeable and legally responsible on the contract." The plain meaning of the contract is that defendant sold and plaintiffs purchased seven hundred and fifty bushels of corn at seventy-five cents per bushel to be delivered between the date of the contract and March 1, 1917, and the only option was as to when it should be delivered. This construction is consistent with the attendant circumstances and surroundings. Plaintiffs were buying, selling and shipping corn, and were buying this corn from defendant with the view of selling it. One of the plaintiffs testified: "We bought a good deal of corn, and were ready and willing to pay defendant for his corn when delivered. I requested him in writing to deliver the corn." We hold that the option referred only to the *time* of delivery and not to delivery. There was nothing in the contract as evidenced by the memorandum nor is there anything in the record tending to show that plaintiffs were merely taking an option on the corn, and that later they might take it or not as they might then decide.

Was the memorandum of the contract altered so as to render the contract void, or the memorandum inadmis-

sible as the written evidence of the contract? Sometime after defendant had signed the memorandum as set out, supra, Dees, one of the plaintiffs took the carbon copy he had retained and without the knowledge and consent of defendant wrote thereon: "Accepted. 10-17-16. Bernie Lumber Company, Per Dees." Defendant contends that this changed the legal effect of the memorandum, and therefore rendered the contract void; or that because of said alteration the memorandum became useless as evidence. But did this addition change the legal effect of the memorandum so far as affects defendant? It certainly did not change the contract, because plaintiffs were always bound to accept so far as the contract was concerned, and could only have avoided acceptance or damages for refusal by resorting to the Statute of Frauds. Endorsing the acceptance in writing, and signing the same by plaintiffs had only the effect of removing the bar of the statute as to plaintiffs and made the contract *enforceable* against them the same as against defendant. The real contract in this case is oral, and the memorandum thereof signed by the party to be charged as required by the statute in order to make the contract enforceable against that party need not be made contemporaneous with the sale, nor is it necessary that such *written* evidence of such contract be all on one paper. It is sufficient if it be signed at any time before enforcement of the contract is sought. [Grocer Company et al. v. Capen, 23 Mo. App. 301; Heideman v. Wolfstein, 12 Mo. App. 366; Armsby Company v. Eckerly, 42 Mo. App. 299.] The chief necessity for the memorandum in writing signed by the party to be charged is for use as evidence, for while plaintiff, who is seeking to enforce the contract, may prove acceptance for instance by parol, but he can prove the making of the contract by the other party, the party to be charged, by the writing only. [Am. Publishing Company v. Walker, 87 Mo. App. 503.] The effect of signing the original memorandum of the contract by plaintiffs in the manner disclosed here is not different

to what the effect would have been had it been written on a different paper or in a letter. [Moore v. Mountcastle, 61 Mo. 424; 2 Cyc. 210, 212.] This notation or added memorandum in no way changed or altered the obligation or affected the interest of the defendant as to whom the instrument was already complete.

Let us put the shoe on the other foot. Plaintiffs signed the memorandum after the contract was entered into, and did so without the knowledge and consent of defendant. Now suppose corn had gone down instead of up, which, perchance, may have had something to do with defendant's refusal to deliver; and on March 1, 1917, defendant had offered to deliver the seven hundred and fifty bushels of corn and demanded that plaintiffs take the same and pay him seventy-five cents per bushel according to the contract, and plaintiffs had refused to accept the corn. Could they have pleaded the Statute of Frauds? They could not, because then they had signed the memorandum and being the parties to be charged, would be bound. Could they plead that their signing the memorandum without the knowledge and consent of the defendant rendered the contract void or rendered the memorandum thereof inadmissible as evidence? We do not think so. We hold that the alteration of the memorandum since it in no wise affected the rights and remedies of the defendant, the person sought to be charged, was not of consequence, and will not defeat recovery.

Defendant assigns as error the giving on behalf of plaintiffs the instruction on the measure of damages, which is as follows: "You are further instructed that if you find for plaintiffs you will assess their damages at such sum as you may find and believe from the evidence was the difference per bushel, on the day or days plaintiff requested delivery 'of said corn, between the price defendant agreed to sell said corn to plaintiffs for, and the market value of corn of the kind and quality sold by defendant at Bernie, Missouri, the ag-

gregate amount of your verdict not to exceed the sum claimed in the petition, to-wit: $750."

The true measure of damages would be the difference between the price of the corn on the day plaintiffs demanded delivery, and the contract price of seventy-five cents per bushel, but about the only evidence touching upon value is that by plaintiffs that on March 1, 1917, the corn was worth $1.25 per bushel. The jury returned a verdict however, for only $187.50, and defendant cannot complain in this character of case.

We find nothing in the record that indicates that the trial court granted the new trial on any ground where such action would be within the court's discretion, hence we conclude that the trial court acted from some erroneous conclusion of law, which makes the matter of granting a new trial a question for review. [Graney v. Railroad, 157 Mo. 666, 57 S. W. 276; Grain Company v. Railroad, 177 Mo. App. 194, 164 S. W. 182; Lowry v. Smith, 199 Mo. App. 163, 198 S. W. 437.]

The order and judgment granting a new trial is reversed, and cause remanded with directions to reinstate the verdict, and enter judgment thereon as of the date of its return. *Sturgis, P. J.,* and *Farrington, J.,* concur.