## GEROULD CO. v. ARNOLD CONSTABLE & CO.
### No. 2803.

Circuit Court of Appeals, First Circuit.
May 23, 1933.

Edward C. Park, of Boston, Mass. (Withington, Cross, Proctor & Park, of Boston, Mass., on the brief), for appellant.

A. Donald MacKinnon (of Milbank, Tweed, Hope & Webb), of New York City (Richard C. Evarts and Lyne, Woodworth & Evarts, all of Boston, Mass., on the brief; Andrew Jackson, of New York City, of counsel), for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

This is an appeal from a decree in equity by the Gerould Company, Inc., a New York corporation, intervener in an equity suit between the appellee and the trustee in bankruptcy of the A. E. Little Company, a corporation organized under the laws of Massachusetts. The District Court ordered the Gerould Company, Inc., to surrender to the appellee certain premises which the Gerould Company, Inc., occupied in a department store conducted by the appellee in the city of New York.

In 1915, Arnold Constable & Co., Inc., hereinafter referred to as the Arnold Constable Company, entered into an agreement in writing with Alexander E. Little and George E. Noyes, copartners doing business under the name and style of A. E. Little & Co., in which it was provided that it leased to the copartners "a certain store consisting of the ground floor with mezzanine and basement and second story over the same," which was a part of the main store occupied by Arnold Constable Company, to be used exclusively for the sale of shoes and millinery, all of which were to be branded "Arnold Constable & Co.," and for the sale of rubbers, findings and certain other accessories connected with the shoe and millinery business.

In the instrument the Arnold Constable Company is described as lessors, and the copartners are described as lessees. The instrument provided that the copartners should pay as rental a certain percentage of the gross receipts.

The instrument, however, further provided that Arnold Constable Company should take charge of all moneys, furnish office help, guarantee payment of all merchandise sold by A. E. Little & Co. on credit, take proper charge of all merchandise sold, prepare the same for delivery, and deliver the same free of charge to customers within the limits of its delivery system, and account for all moneys received for the same at stated periods. The part of the store occupied by the copartners and later by the corporation, A. E. Little Company, was in outward appearance a part of the general store of Arnold Constable Company, and was at all times accessible to the manager of the Arnold Constable Company. The comptroller of the Arnold Constable Company testified that the employees of the A. E. Little Company were under the general supervision of the Arnold Constable Company, and the manager of Arnold Constable Company visited the shoe and millinery departments several times a day and often gave directions to the employees of those departments, if they should inquire. The copartners agreed to collaborate with the Arnold Constable Company as to advertising, and guaranteed under the agreement that the gross revenue of the shoe and millinery business should be not less than $35,000 the first year, and $42,500 each year thereafter during the continuance of the agreement, or until the A. E. Little Company should be able to add the well-known "Sorosis" shoe to their trade.

It was further agreed that the copartners might form a corporation, which they later did, which is herein referred to as A. E. Little Company, for the conduct of the shoe and millinery business, but further provided that they should not assign or transfer the agreement except to such corporation.

In 1917, the Gerould Company was organized to conduct the millinery business previously conducted by the copartners, and obtained a sublease, so called, from the A. E. Little Company of a part of the store occupied by the A. E. Little Company, agreeing to pay to the A. E. Little Company a percentage of its gross sales as rentals, and being the same percentage as the A. E. Little Company had agreed to pay to the Arnold Constable Company on its gross sales.

Without setting forth all the details of the arrangements and agreement between the Arnold Constable Company and the copartners, Little and Noyes, it is evident that it was one of the not uncommon modern arrangements for the conduct of separate departments in a general department store, by turning over an entire department, like shoes or millinery, to some one familiar with that line of business and in whom the management of the general store has confidence, both as to their business acumen and integrity, retaining general oversight of the business, the business of the department in question being conducted so that to the public it is a part of the general store and under its sole management. Arkansas Valley Smelting Co. v. Belden Mining Co., 127 U. S. 379, 387, 8 S. Ct. 1308, 32 L. Ed. 246; Paige v. Faure, 229 N. Y. 114, 118, 127 N. E. 898, 10 A. L. R. 649.

Such arrangements may result in a lease

of a part of a store, or, even if designated as a lease and the parties as lessor and lessee, the agreement may be of such a nature that by reason of the trust and confidence imposed in the so-called lessees it is something more than a lease and is not assignable, unless assented to by the lessor. Marcelle, Inc., v. Sol. & S. Marcus Co., 274 Mass. 469, 175 N. E. 83, 74 A. L. R. 1012; Nassau Hotel Co. v. Barnett et al., 164 App. Div. 203, 149 N. Y. S. 645. The usual test as to whether it constitutes a lease is whether the instrument gives the so-called lessee exclusive possession of the premises. Roberts v. Lynn Ice Co., 187 Mass. 402, 406, 73 N. E. 523. The A. E. Little Company from the record does not appear to have had exclusive possession of the premises described in the agreement.

Whether the occupancy of the designated portions of the store of the Arnold Constable Company was that of a mere licensee, or under an agreement under which the Arnold Constable Company as the owner or lessee of the entire building, reposing special confidence in the business ability and integrity of the other contracting parties, granted the use of a part of its store for the conduct by the copartners of a certain part of the general business of the Arnold Constable Company, does not affect the result in this case.

■ If the agreement contained some of the characteristics of a lease, in that it provided for the occupancy of a certain part of the store and the payment of rental in the form of a percentage of the gross receipts of the so-called lessee, and contained many of the customary provisions of a lease, it was clearly more than a mere lease. It was an agreement designed to regulate the various relations and points of possible friction arising out of an arrangement for conducting a business within a business, and in a manner so that to the public eye it was a single business, and was based on a confidential relation and the special ability of the so-called lessee to conduct that particular line of business, and to produce a certain gross revenue. From the nature of the relations between the parties indicated by this instrument, it is obvious, we think, that, as the District Court found, it was not within the contemplation of the parties that a substitution for the so-called lessees would be acceptable to the Arnold Constable Company unless with its approval, and this is plainly indicated by the provision that it should not be assigned to any one except to a corporation formed by the copartners to conduct said business.

This provision, we think, in view of the confidence imposed in the copartners, precluded any assignment of the agreement by the corporation formed by them. New York Bank Note Co. v. Hamilton Bank Note, etc., Co., 180 N. Y. 280, 73 N. E. 48; Wooster v. Crane & Co., 73 N. J. Eq. 22, 66 A. 1093; Moore v. Thompson, 93 Mo. App. 336, 67 S. W. 680. The result was as though there was a provision forbidding assignment thereafter except by consent of the Arnold Constable Company. The assignment of this agreement carried with it much more than the mere occupation of the premises at a rental fixed by its gross sales. The assignee, the corporation, became obligated to carry out all its terms and conditions. The assignee could not transfer the confidential relations imposed on it by this agreement to a third party except by consent of Arnold Constable Company, and a fortiori could not divide up such obligations by a sublease. Marcelle, Inc., v. Sol. & S. Marcus Co., supra; Milwaukee Boston Store v. Katz, 153 Wis. 492, 520, 140 N. W. 1038; Nassau Hotel Co. v. Barnett et al., supra; Paige v. Faure, supra; Arkansas Valley Smelting Co. v. Belden Mining Co., supra.

■ According to an affidavit filed by one Weatherbee, the president of the Arnold Constable Company, from 1915 to 1925, Weatherbee knew of arrangements made between the A. E. Little Company and the Gerould Company for the occupancy of a part of the store and the conduct of the millinery business, and that the millinery business during a part of the time he was president was conducted by the Gerould Company, the officers of which were the son-in-law and wife of A. E. Little, and that he consented that a sublease might be made.

While the existence of the intervener was known to the former president of the Arnold Constable Company, and that he had knowledge that it was conducting the millinery business under some arrangement with the A. E. Little Company, and that he consented to a sublease being made, it does not actually appear from his affidavit that he ever saw the sublease or knew what its terms were, or whether the intervener acquired any rights thereunder as against the Arnold Constable Company.

However, even if the notice of the former president may have been notice to the Arnold Constable Company that Gerould Company was conducting the millinery department by some arrangement with A. E. Little Company, the president had no authority to approve a sublease that would bind the Arnold Constable Company, and it appears that no other officer of the company actually knew of the

existence of the Gerould Company until May, 1932, shortly before bankruptcy proceedings, when the manager of the A. E. Little Company asked the comptroller of Arnold Constable Company to split checks for receipts from the shoe and millinery department, and informed the comptroller that the Gerould Company and the A. E. Little Company were separate corporations. The comptroller testified that the books of that company contained no reference to the Gerould Company, and there was no distinction so far as the public was concerned between the shoe and millinery departments and the other departments of the store of the Arnold Constable Company; that all departments were handled as a part of the business of the Arnold Constable Company; that the sales slips of the millinery department had nothing on them which indicated that the Gerould Company had anything to do with them.

The comptroller also checked up the agreement with A. E. Little Company, and conferred with the then president of the Arnold Constable Company, who informed him, as the then president stated in a deposition filed in the case, that they had no dealings with the Gerould Company, Inc., and did not know of it. The checks were not split between the corporations. On the contrary, the Arnold Constable Company continued to conduct its business and keep all accounts with the A. E. Little Company. Nothing in the record indicates that the board of directors of the Arnold Constable Company took any action from which a consent to any sublease to the Gerould Company could be inferred, or that the corporation was estopped from refusing to recognize any right of the Gerould Company, Inc., in the premises by its failure to act, assuming that knowledge of the president was knowledge that Gerould Company, Inc., was conducting the millinery business by some arrangement with the A. E. Little Company. To hold that silence creates a waiver or estoppel, it must appear that the party waiving or estopped had full knowledge of the facts and his own rights.

From the evidence and findings of fact by the sitting justice, we think the decree must be affirmed. The A. E. Little Company, by reason of the special trust and confidence imposed by the Arnold Constable Company in the officers of the A. E. Little Company, who were the original parties to the agreement, and by the special terms of the agreement, the assignee of the copartners could not assign or make a sublease of any part of the premises it occupied under its agreement with the Arnold Constable Company without the consent of the latter, and the Gerould Company, Inc., therefore, acquired no rights therein as against the Arnold Constable Company.

The decree of the District Court is affirmed, with costs.