CHARLES HOYLE *et al.*, Respondents, v. WILLIAM H.
SCUDDER, JR., Assignee of the GUERNSEY
FURNITURE COMPANY, Appellant.

St. Louis Court of Appeals, November 13, 1888.

Assignment: PROVABLE CLAIM. A claim of unliquidated damages
for breach by a lessee of his covenant to deliver up the premises at
the end of the term " in as good condition and order as the same
are now in," may be proved and allowed before the lessee's general
assignee as the demand of a creditor, if the lease was made before
the assignment, and the damages have matured in time for
adjustment and allowance without prejudice to the winding up of
the estate.

*Appeal from the St. Louis City Circuit Court.*—HON.
GEORGE W. LUBKE, Judge.

AFFIRMED.

*Walter B. Douglas*, for the appellant.

The plaintiffs having consented by the supplemental
lease to the alteration made in the leased premises by
the defendant's assignor, have no claim for damages on
account thereof. The defendant is trustee for those
persons who were creditors of the assignor at the date of
the assignment, and the funds in his hands are subject
to the claims of those persons only. *Hulse v. Marshall*,
9 Mo. App. 148 ; *In re Adams*, 67 How. Pr. 286 ; *Ren-
dleman v. Willard*, 15 Mo. App. 375 ; *In re Church*, 6
N. E. Rep. 498. Here the assignment was made and
filed for record on the twenty-first of January, 1888,
while the plaintiffs' claim did not come into existence
until the second of March, 1888, and the plaintiffs were
consequently not creditors at the date of the assignment.
The claim of the plaintiffs is for unascertained damages,
and as such is not provable against an assigned estate

under our statute. *In re Adams*, 67 How. Pr. 284; *Frost v. Carter*, 1 Johns. Cas. 74; Burrill on Assignments, sec. 476. There is no evidence as to the amount of damages sustained by the plaintiffs. The covenant is to quit and deliver up the premises in as good condition and order as they were at the date of the lease. The evidence all goes to show what it would cost to restore them to the same condition.

*Dyer, Lee & Ellis*, for the respondents.

The defendant is a trustee of the estate of the assignor solely for the benefit of persons whose claims were due at the date of the assignment. Sections 372 and 373, Revised Statutes, make provisions for the allowance of "demands" against the estate of the assignor. Section 373, above referred to, also speaks of a "claim" being made before the assignee. There is nothing in chapter five of the Revised Statutes concerning assignments for the benefit of creditors which excludes "demands" or "claims" which are not then mature. The word "demand" is the largest word in law except "claim," and embraces all sorts of actions, rights, contracts, etc. 1 Abbot's Law Dict. 361; *Vedder v. Vedder*, 1 Duer, 257; *In re Denny*, 2 Hill, 220. A claim for unliquidated damages under the language of our statute may be proved against an assigned estate. R. S. secs. 372 and 373; *Dryden v. Kellogg*, 2 Mo. App. 87; *Cable v. McCune*, 26 Mo. 371; *Babcock v. Lillis*, 4 Bradf. 218; *Lillis case*, 4 Abb. Pr. 272; *Foundry v. Hovey*, 21 Pick 417, 454; *Haynes v. Brown*, 36 N. H. 545; *Duvall v. Raisin*, 7 Mo. App. 449; *White v. Thomas*, 75 Mo. 457; *Snyder v. Railroad*, 86 Mo. 613; *Beppler v. Menown*, 17 Mo. App. 447.

THOMPSON, J., delivered the opinion of the court.

The plaintiffs exhibited a demand against the assigned estate of the Guernsey Furniture Company, which was disallowed by the assignee and they appealed to the circuit court. The claim was allowed by the

circuit court, in the sum of four hundred and ninety-five dollars, and the assignee appealed to this court. It appears that on November 22, 1884, the Guernsey Furniture Company leased a building of the plaintiffs for the term of five years, which lease contained the covenant that they would deliver up the premises at the end of the term (either by limitation or forfeiture), "in as good condition and order as the same are now in," reasonable wear and tear, etc., excepted. It also appears that the lessee made certain alterations in the steam boilers of the building without the consent of the plaintiffs, which tended to render the building less desirable for renting purposes. It further appears that, subsequently to the twenty-eighth of November, 1885, the parties agreed upon a modification of the lease, by a supplementary lease, which contains the following paragraph :

"And the said lessors, in consideration of said increased rent, on their part hereby consent to the said use of said building as hereinbefore set forth, and hereby consent to all changes or alterations in said building heretofore made or which may hereafter be made by said lessee of said Electric Light Company in the prosecution of said business as aforesaid ;    *    *    *

*    *    *    And said lessors further agree that all the covenants of said original lease, including the one for the restoration of said premises to the said lessors at the end of said lease in as good condition and order as the same were in when said lessee first took possession thereof, shall be considered in force and shall be construed as though this supplemental agreement had been a part of the original lease."

The deed of assignment was dated on the twenty-first of January, 1888. About a month after the date of the assignment, the plaintiffs, by a proceeding before a justice of the peace, forfeited the lease for non-payment of rent.

The alterations having been made prior to the supplementary lease, any damages produced by a breach of the covenant of the original lease against alterations

without the consent of the lessors, are waived by the terms of the supplementary lease. It thus appears that the claim which they now prefer is founded upon a breach of the covenant of the original lease, which was preserved and continued in the supplementary lease, to restore the premises at the end of the term (whether by forfeiture or otherwise), in as good a condition as when they were let.

The statute relating to assignments nowhere defines or limits the demands which shall be provable before the assignee. It merely recites (R. S. sec. 372) that the assignee shall, at a stated time and place, "proceed publicly to adjust and allow *demands* against the estate and effects of the assignor." By the next section, he shall "commence the adjustment and allowance of *demands* against the trust fund" at a given hour, and continue the same a stated length of time ; and in the same section there is a proviso saving the rights of "any creditor who shall fail to lay his *claim* before said assignee during said term, on account of sickness," etc. The next section empowers the assignee to examine witnesses on oath touching any *claim* exhibited to him for allowance. In other sections the words "demand" and "claim" are used indifferently to describe the debts which the assignee shall allow. Section 354, defining the purposes of voluntary assignments for the benefit of creditors, provides that they shall be "for the benefit of all the *creditors* of the assignor in proportion to their respective *claims.*"

.A strict and technical construction of the statute would probably result in the contention which has been ably urged on behalf of the assignee in this case,—that a demand which does not exist at the time when the assignment is made, in any acknowledged or liquidated form, and which depends upon a contingency which may never happen, and which, when it does happen, presents itself in the form of an unliquidated demand,— is not within the terms of the statute. We have been cited to two cases in other jurisdictions which uphold this view. *In re Church,* 14 Atl. Rep. [R. I.] 874; *In re*

*Adams*, 67 How. Pr. [N. Y.] 284. It is not denied by the learned counsel for the appellant that the statute embraces debts which were contracted by the assignor prior to the assignment, but which were by the terms of the contract payable at a date subsequent thereto,—in other words, debts which fall within the descriptive words used by the civilians,—*debitum in praesenti, solvendum in futuro*. But, although the demand preferred in this case arose out of the breach of a contract which the assignor had entered into before the date of the assignment, which contract might possibly not be broken at all, and because, when broken, it gave rise to a cause of action sounding in damages and not to a liquidated demand, it is supposed that it is not within the statute. Moreover, it is forcibly argued that, when the assignment is made, the assigned property is, by the force of the statute, impressed with a trust for the benefit of those who are creditors *at that time*, and not for the benefit of those who, by some subsequent breach of contract wholly contingent and conjectural at the time of the assignment, become in a sense creditors of the assignor thereafter. We do not seek to disparage the force of this reasoning; but we are nevertheless of the opinion that a claim of this nature comes within the equity of the statute. Why should it be excluded? It is in point of justice and conscience confessedly a meritorious claim, provided the damages which the claimants contend for have been made good by their evidence. The reason given by the court of common pleas of the city of New York in *In re Adams, supra*, for disallowing a somewhat analogous claim, was that the allowance of claims of such a nature, maturing upon future contingencies, would have the effect of keeping the administration of the assigned estate open for an indefinite length of time. This argument can have no force, when applied to a claim, such as the present, which matured and was presented to the assignee for allowance in time to be allowed and paid out of the assets without in any wise delaying the administration. We agree that the possibility of claims of the present kind, maturing at

some indefinite period subsequent to the assignment, ought not to operate to delay the administration of the assigned estate; but where, as in this case, they do mature in time to be presented to the assignee, to be proved up before him, and to receive their ratable share of the proceeds of the sale of the assigned property, without delaying the administration, we see no reason, growing out of the language or policy of the statute, why they should not be allowed and paid.

Here is the case of a trading corporation which has made a general assignment of all its assets for the benefit of all its creditors. Such an assignment, made by such a corporation, is tantamount to a dissolution of the corporation itself, and in a proceeding against its stockholders to charge them in respect of their individual liability, it would be so held. As a corporation it has, by thus dispossessing itself of all its assets, disabled itself from going on and responding to those who may subsequently become its creditors. If then we turn from this picture and suppose that, instead of such a corporation inflicting slight damage upon leased property, it had literally wrecked the building and inflicted great damage, we should probably be moved by a sense of the very hardship of the case to the view that the legislature could not have intended to exclude such a claim, growing out of the breach of a contract made before the assignment, merely because of the bare possibility that it might not have accrued at all.

But we do not rest the case upon a consideration of any supposed hardship. We are of the opinion that the purpose of the legislature was that the assets of the assignor should be administered in the payment of any class of meritorious demands springing out of the breach of contracts, which contracts were made prior to the assignment, provided the demands (being of the nature of this one) accrued in time for adjustment and allowance without prejudice to the winding up of the estate.

The point is made that there is no evidence of the damages which the circuit court awarded. Without

going into an analysis of the evidence, we will say that we have examined it, and we are of opinion that there is some evidence to support the finding of the circuit court in this regard and with the weight of it we, of course, have nothing to do.

The judgment of the circuit court is accordingly affirmed. All the judges concur.