BAKER ET AL. *v.* HERRLINGER, ASSIGNEE.

*Landlord and tenant—Accepting keys as acknowledgment of surrender—Lessee assigns for benefit of creditors—Claim of lessor for breach of contract—Measure of damages.*

1. An acceptance by a lessor of the keys to leased premises tendered by the lessee 'before the expiration of the lease does not constitute an acceptance of the lessee's proffer of surrender, where, at the time of receiving back the keys, the lessor notifies the lessee that he is not accepting the surrender of the premises or waiving any right he might have under the lease, but is taking possession for the purpose of preventing waste and deterioration and securing a tenant, with the view of minimizing damages arising from the breach of the contract of lease.

2. A claim for damages for breach of contract of lease, which contract was entered into before the lessee made an assignment for benefit of creditors and was breached by the assignee, is a claim against the assigned estate which the les-

sor as a creditor may present and have allowed against such estate.

3. The measure of damages in such case is the amount due as agreed rent under the lease, less the amount received from the use of the premises by renting them to others after abandonment by the lessee.

(Decided February 27, 1922.)

Appeal: Court of Appeals for Hamilton county.

*Messrs. Waite, Schindel & Bayless; Mr. Coleman Avery* and *Mr. Herbert Shaffer,* for plaintiffs.
*Mr. John C. Healy,* for defendant.

Buchwalter, J. The plaintiffs, who are the owners of two buildings, leased them by separate instruments to August G. and Frank H. Kreimer, jointly. The leases contained similar provisions, but differed as to date, duration and description of the property. Both leases were to terminate on the same day, to-wit: March 31, 1921. On February 19, 1914, August G. Kreimer assigned his interest in both leases to Frank H. Kreimer, who thereby became the sole lessee. Frank H. Kreimer later made an assignment for the benefit of creditors to Andrew L. Herrlinger, who is the defendant herein. The plaintiffs after the assignment to Herrlinger presented a claim for rent from the time the assignee vacated the premises to the end of the term; for estimated taxes and insurance, which would thereafter become due; and for repairs required and waste committed. The rent had been paid up to the time of the assignment, and at the time of assignment the assignee notified the lessors that he would not assume any of the obligations of the leases. He took possession of the premises to dispose of certain personal

property, paid the rent during the time of occupancy, and when he vacated the premises turned over the keys to the clerk of the court of insolvency. The lessors received the keys from the clerk, and notified the lessees that they were taking "possession of said premises for the purpose of preventing waste and deterioration, and for the purpose of securing a tenant for said premises, with the view, if possible, of minimizing the damages which will arise by reason of your breach of contracts of leases," and that they "were not accepting the surrender of said premises" and "not waiving any rights which they may have against you or either of you under the provisions of said leases."

It is admitted that the claim was presented within the time authorized by Section 11134, General Code, and that upon rejection of the claim this action was brought within the time specified therein.

The provisions of the two leases, which are identical, and are of importance in this controversy, are:

"And said lessees for themselves and for their executors, administrators and assigns, covenant and agree with said lessors, their heirs and assigns, and this lease is upon condition that said lessees will pay said rents in manner aforesaid, unless said premises shall be destroyed or rendered untenantable by fire or unavoidable accident; that they will not do or suffer any waste therein nor use said premises for any unlawful purpose; that they will not assign this lease or any interest therein, or hereunder, nor underlet said premises, nor any part thereof nor permit their interest under this lease or any part thereof to be sold or assigned by operation of law or under execution or other legal process or order of court or otherwise, without the written

consent of said lessors; that they will keep said building and appurtenances in repair, both outside and inside, during said term at their own expense; and that at the end of said term they will deliver up said premises in as good order and condition as they now are, or may be put by said lessors, reasonable use and ordinary wear and tear thereof, and damage by fire and other unavoidable casualty excepted.''

It is claimed that at the time of assignment the provisions prohibiting the lessees from doing or suffering waste, and providing for the repair of the buildings both inside and outside, and the covenant against assigning the leases, had been broken.

The evidence discloses that certain waste had been committed and certain repairs were necessary. The taxes, insurance and repairs, as shown by the evidence, amounted to $10,327.28. The difference between the rent provided for in the leases and the rent collected from other tenants was $4,550, making a total of $14,877.28.

Plaintiffs contend that the breach of the leases occurred when the repairs were not made and the waste was committed, and also when the assignment was made.

Defendant claims that the action of the lessors in taking possession of and leasing the property was an acceptance of the surrender of the leases, and was a discharge of all the obligations of the lessees, and also that no right of action existed in favor of the plaintiffs at the time of the assignment.

The action of the lessors in taking the keys and endeavoring to secure a new tenant, and in finally again leasing the premises, did not constitute a surrender. The notice given by the lessors to the les-

sees precludes the idea of an acceptance by them of the lessees' proffer of surrender. This has been definitely decided by the supreme court in the case of *Bumiller* v. *Walker*, 95 Ohio St., 344. The fifth paragraph of the syllabus reads:

"An acceptance by the landlord of the key to the premises, his advertising for a new tenant and renting the premises to another upon its vacation by the old tenant, under the facts stated, are not sufficient to constitute a surrender."

Various authorities from other states, contrary to this view, have been cited, but as a definite pronouncement on this question has been made by the supreme court of this state we hold that under the facts herein there was no surrender and acceptance.

It is urged that no right of action existed in favor of the plaintiffs at the time of the assignment. In other words, they were not such creditors as are referred to in the General Code; that there was no debt provable at the time of the assignment. The deed to the assignee is made "In trust for the benefit of all the creditors of the said Frank H. Kreimer."

The language of Section 11092, General Code, is:

"When a person  *  *  *  makes an assignment to a trustee of property,  *  *  *  in trust for the benefit of creditors."

The real question is: What is meant by the provisions of the General Code in the use of the word "creditor?" Is the term confined to those whose debts are then payable, or where the amount is definite, but time of payment is deferred; or does it include those having claims for unliquidated damages?

Various sections of the Code, Sections 11135, 11136,

11137, 11140 and 11142, refer to those having a "claim." The word "creditor" may be used in a restricted sense to mean those who have claims that are definite and fixed in amount, or which can, by computation, be definitely ascertained, but in the broader sense it may refer to "one who has a right to recover money from another on any account whatever." In the sections of the Code referred to, the term "creditor" is used without any words of limitation, and it would seem to include claims for unliquidated damages then existing.

Defendant contends that as Section 11104, which refers to property transferred in fraud of creditors, provides for creditors whose claims are matured, Section 11092, which does not contain that language, could not be construed to include unmatured claims. The distinction between the two sections is apparent. In Section 11092 provision is voluntarily made to distribute the debtor's entire estate among all of his creditors. In Section 11104 the creditors seek to subject and secure distribution of the debtor's estate among all of the creditors, where the debtor has fraudulently conveyed it to others. Under both sections, when the property comes into the hands of the trustees it is distributed among all creditors.

These sections are discussed at considerable length in *Lally* v. *Farr*, 6 N. P., 73, which was later affirmed by the circuit court, and the reasons are given for the inclusion in Section 11104 of creditors whose claims are unmatured. The court in that case, at page 79, says:

"A liability for damages, whether arising out of contract or *ex delicto*, existing prior to the assignment for the benefit of creditors and reduced to a judgment after the assignment, is, when so liqui-

dated, a claim entitled to share in the distribution of the insolvent's estate.''

Many decisions from other states have been cited, in some of which by statute they follow the rule in bankruptcy cases, and in others apply the rule that an unliquidated debt is not a provable one against the assigned estate.   There are, however, a number of states in which such claims may be allowed, where the contract is made before the assignment and the damages have matured in time for adjustment and allowance without prejudice to the time of winding up the estate.  *Smith* v. *Goodman, Assignee,* 149 Ill., 75; *Hill* v. *Graham,* 11 Col. App., 536; *Hoyle* v. *Scudder,* 32 Mo. App., 372, and *Moore* v. *Thompson,* 93 Mo. App., 336.

An Ohio case on which plaintiffs rely is that of *Wilder* v. *McDonald,* 63 Ohio St., 383.   Defendant claims the rule as laid down therein is *obiter dictum.* In that case there was a lease to Neff for five years, with privilege of purchase.   During the term Neff made an assignment for the benefit of creditors. At the expiration of the lease, lessor filed an action against the assignees individually to recover rent, taxes and assessments becoming due during the term of the lease.   The court discusses the rights of assignees to either accept or reject a lease, holding, in that case, that it had been rejected by the assignees, and that there was no personal liability on the assignees.   The court also considered the respective liabilities of the lessee and the assignees to the lessor, and, in the opinion, states that if the action had been against the assignees in their trust capacity, instead of individually, it would have been a valid claim of the lessor as a general creditor.

The rule thus given is also contained in the syllabus, concurred in by the other judges:

"1. An assignee for the benefit of creditors, by accepting the trust, does not become the assignee of a lease belonging to his assignor, nor personally liable on the covenants of the lessee. Nor, is he bound to accept the assignment of the lease, if in his opinion it will be unprofitable to the creditors to do so; and, he is entitled to a reasonable time to elect whether to adopt or reject the lease.

"2. The assignment, however, does not terminate the lease, nor discharge the obligations of the lessee. The lessor is entitled to have his claim for rent allowed by the assignee, so that it may participate, in its proper order, in the trust fund; and it is not a valid objection to such allowance or participation, that the rent, or any part of it, is not then due."

The questions here determined were not such as are often made in reasoning to a conclusion not involved in the decision of a case, but only used by way of illustration. These matters were so related that in determining that the assignees were not liable individually the court properly considered the rights of the lessor of the leasehold estate, where an assignment had been made, and his right to present and prove his claim; also against whom it could be proved. In view of the positive rule pronounced in the syllabus of the *Wilder case*, we hold that the owners of the leasehold estate herein may present and have allowed such a claim against the assigned estate.

It may be further added that it was a meritorious claim, founded on a contract which existed prior to the time of the assignment, which the evidence discloses was breached in some respects prior to such assignment.

It is further contended that if the lease was of long duration the trust might be held open for an indefinite time. It is necessary for a creditor to present his claim within the time allowed by the provisions of the code, and to be able to prove his damage at the time of the trial. If he cannot do this, his proof fails, as in any other case.

The creditor in the case now under consideration was able to submit proof of his damage without prejudice to the time of winding up the estate, so that such contention need not here be considered further.

The measure of damage is also a controverted point. It is a general rule that damages for the breach of a contract must be shown with certainty, and not be left to speculation or conjecture. At the time of the trial the plaintiff was able to show with certainty what loss had been sustained as a direct result of the breach of the contract.

Defendant claims the true rule to be the difference between the rent agreed to be paid and the rental value. The cases cited by him are those in which the lessor failed to carry out a contract of lease, and the rule was laid down that the difference between the rent agreed upon and the rental value was the measure of damage to the lessee, refusing to allow any damage for loss of speculative profits in the business which plaintiff expected to carry on in such leased premises. That is not the situation here.

In the case of *Bumiller* v. *Walker, supra,* the court, at page 356, says:

"Walker could not have done otherwise than he did; his acceptance of the key, advertising for a tenant, and renting of the premises, became his legal duty."

The plaintiffs herein notified the lessee that they were not waiving any rights, but would, if possible, minimize the damage, and the evidence discloses that they were diligent in attempting to minimize that loss.

In the leases involved herein the lessees had agreed to pay taxes, insurance, keep the premises in repair, and not suffer waste. These were items of damage suffered by the lessors as a direct result of the breach, as was also the damage for loss of rent. The lessors re-rented the premises, and were in a position to show at the trial the loss on rent actually sustained, to-wit, the amount due as agreed rent, less what they received from the use of the premises by renting to others after they had been abandoned by the lessee.

Many states have adopted the rule that the measure of damage is the difference between the rent the lessor was to receive under the lease and the rent actually received from subsequent tenants, provided there was good faith in the subsequent letting. *Segal* v. *Ensler*, 16 N. Y. Misc., 43; *Higgins* v. *Street*, 92 Pac. Rep., 153; *Auer* v. *Penn*, 99 Pa. St., 370; *Respini* v. *Porta*, 89 Cal., 464, and *Hayward Bros.* v. *Ramge*, 33 Neb., 836.

The court finds under the rules heretofore laid down, and upon the evidence, in favor of the plaintiffs, and the defendant below is ordered to allow their claim in the sum of fourteen thousand eight hundred and fifty-seven and 28/100 ($14,857.28) dollars, for the purposes of distribution.

*Judgment accordingly.*

HAMILTON, P. J., and CUSHING, J., concur.