Common Pleas Court of Hamilton County.

GEORGE GOLDE V. GEORGE GOLDE, INC.

Decided May 20, 1932.

*Sylvester Hickey*, for lessor.
*Frost & Jacobs*, and *H. J. Siebenthaler*, for receiver.

MATTHEWS, J.

This is a proceeding for the judicial dissolution of a private corporation brought under favor of Sections 8623-86 *et seq.*, General Code, which constitute a part of the General Corporation Act, and comes before the court

upon the intervening petition of Herman Elsaesser presenting a claim for allowance upon the covenants contained in a lease which he owns as assignee of the lessor and of which the defendant is the assignee of the lessee. Their rights are the same as though they were the original lessor and lessee.

The leased premises consisted of two portions. As to one portion the term commenced on the first day of June, 1922, and as to the other portion on the first day of January, 1923. The term was to end as to both portions on the 31st day of May, 1935. The annual rental as to each portion was $12,500 payable in monthly installments of $2,083.33 in advance. The defendant defaulted in the payment of the rent due on June 1, 1931. This action was filed on June 30, 1931, and on that day a receiver was appointed to take charge of the property of the defendant with authority to conduct its business until the further order of the court. On July 17, 1931, the decree dissolving the corporation was entered, in which, *inter alia*, was the provision "On motion of the plaintiff and for good cause shown the Court retains jurisdiction over the winding up of the affairs of said corporation and continues the order and authority of the said Robert E. Mullane, heretofore appointed receiver herein, and retains jurisdiction, to order and adjudge in respect to the liquidation of said business, and to any and all matters authorized by law."

There are certain provisions in the lease imposing certain conditions and providing remedies in the event of their violation. These provisions are as follows:

"In case the lessee fails or omits to perform any of the covenants or conditions herein contained, the term of this lease shall expire three (3) days after notice in writing of any such failure or omission shall be sent by lessor to the lessee by mail or otherwise, addressed to the demised premises, and this lease shall cease and come to an end in the same manner and to the same effect as if that were the date originally fixed herein for the expiration of the term. That if default be made in any of the covenants and/or agreements herein contained in addition to and not in limitation of any other right

or remedy, the lessor shall have the right to re-enter the said demised premises, and the same to have again, re-possess and enjoy.. * * * In the event that the term of this lease shall end before the expiration date originally fixed as herein provided, * * *, the lessor at the lessor's option, may repair, alter and/or change the character of the demised premises as it may deem fit, and/or may let the premises or any part thereof, as the agent of the lessee or otherwise, and receive the rent therefor, applying the same first to the payment of such expenses as the lessor may be put to in entering, dis-possessing, letting, altering and/or changing the character of the demised premises, and then to the payment of the rent and the fulfillment of the lessee's covenants hereunder; and the lessee agrees to pay and shall be liable for amounts equal to the several instalments of rent as they would, under the terms of this lease, become due if no default had occurred, whether the demised premises be re-let or remain vacant in whole or in part, or for a period less than the remainder of the terms, or for the whole thereof, but the lessee shall be entitled to be credited at the end of each month with any net amounts actually received by the lessor during such month for the use or occupancy of the demised premises, or any part thereof, * * *."

"If at any time, proceedings in bankruptcy shall be instituted by or against the lessee, or if the lessee shall compound the lessee's debts or assign over the lessee's estate or effects for payment thereof, or if any execution shall issue against the lessee, or any of the lessee's effects whatsoever, or if a receiver or trustee shall be appointed of the lessee's property, or if this lease shall by operation of law, devolve upon or pass to any person or persons other than the said lessee personally, or his heirs, executors or administrators upon his death, then and in each of said cases this lease shall cease and come to an end three (3) days after notice shall be sent by mail by the lessor to the lessee addressed to the premises. Upon such termination all future instalments of rent unpaid, and all other sums due and payable or to become due and payable by the lessee shall at once become due and payable. Acceptance by the lessor of any sums either for rent or use and occupancy of the whole or any part of the demised premises from any other than the lessee personally shall not be nor be deemed to be a waiver of any of the lessor's rights and remedies hereunder."

On June 26, 1931, which was prior to the appointment of the receiver, the lessor notified the defendant in writing of its default in the payment of rent on June 1, 1931, and ended the notice as follows:

"Now, then, you are hereby notified, as provided in the second paragraph on the second page of said lease, that you have failed or omitted to perform the rent covenant and that the term of your lease shall expire three days after this notice in writing of your said failure shall be sent."

The paragraph referred to in said notice is the first paragraph quoted herein.

On July 13, 1931, the lessor wrote the receiver, asserting the termination of the lease by the notice of June 26, 1931, previously given and stated that if the Court should determine that the lease had not expired by virtue of the previous notice, then he was giving notice thereby of the termination of the lease based on the default in the payment of the July rent, and also that if both these notices were unvailing, then he was relying upon the appointment of the receiver as a ground for the termination of the lease and giving notice based thereon. He consistently maintained the position taken in the notice of July 13, 1931 that the lease was not then in existence, but at the same time claimed the right to let the premises as the agent of the lessee, and claimed that the lessee continued liable to pay amounts equal to the future rents that would have become due as in said "former lease."

On August 4, 1931, the receiver filed an application in this case for instructions, setting forth facts with reference to the lease and the notice which the lessor had given, and representing that it would be to the best interests of all parties "for him to accept said termination notices and consider said lease terminated"; and further represents that "even in the absence of aforesaid notices it would be to the best interest of all parties for the receiver to repudiate said lease." He then set out that it would be necessary in order to realize the most for the assets of the corporation for the receiver to con-

tinue to occupy the premises for a certain time and that the lessor had agreed in consideration that the rents due from the Berland Shoe Stores (a sub-lessee) for the month of July, and in consideration that the receiver would pay $1,000 per month from July 1, 1931, for the part not sublet to the Berland Shoe Stores, that all the rent paid by the receiver and by the Berland Shoe Stores would be applied as a credit against any amounts for future rent thereafter found to be due by the receiver out of the assets in his hands as a claim against the defendant company as damages for the breach of the lease, and also with the condition that the receiver agree to vacate the premises on or after September 1, 1931, on receipt from the lessor of a fifteen day notice in writing requiring him to vacate the same. The receiver represented that it would be to the best interest of the creditors for him to enter into such a rental agreement with the lessor, and he prayed the Court for an order accordingly. On the same day the Court made an order reciting the facts as set forth by the receiver and then decreed as follows:

"Now therefore, it is considered, ordered and adjudged that the lease herein referred to has been terminated by reason of notices served by Herman Elsaesser, and that the landlord, Herman Elsaesser, has the right to re-enter and re-let all or any part of said premises without prejudice to any of his rights for damages by reason of the breach and termination of said lease by the defendant company; and

It is further ordered that the receiver herein pay to the said Herman Elsaesser the sum of Six Hundred and Fifty ($650.00) Dollars, being the amount of rent due for the month of July, 1931, covering that part of the premises occupied by Berland Shoe Stores, Inc.; and

It is further ordered that the receiver be and he hereby is authorized to rent from the said Herman Elsaesser the storeroom heretofore occuped by the defendant, and to pay therefor at the rate of One Thousand ($1,000.00) Dollars per month from July 1, 1931, and that on receipt of fifteen days written notice by mail or otherwise from the said Herman Elsaesser, to vacate said premises on or after September 1, 1931, without further order of this

court; the rent to be apportioned after September 1, 1931, at the rate of One Thusand ($1,000.00) Dollars for occupancy for the month of July, 1931; and One Thousand ($1,000.00) Dollars for occupancy for the month of August, 1931; and

It is further ordered that nothing herein contained shall be considered as a waiver of, or an adjudication of, the amount of the claim for damages which the said Herman Elsaesser has by reason of the breach of said lease by the defendant company, and the court hereby reserves the finding of the amount due for damages by reason of said breach until the further orders of said Court, and does hereby order that the said Herman Elsaesser be made a party to this cause, with leave to plead, until such time as the Court may by further order, and with notice to the said Herman Elsaesser, limit the time for filing such pleading."

Said entry was endorsed by the attorney for Herman Elsaesser, and the receiver rented the premises in accordance with the authority given him therein.

The claim presented by the intervening petitioner aggregates $85,709.81, and is made up of the following items:

1. Difference in rent reserved and rent collected for the month of July, 1931, $433.33;

2. Difference between rent reserved and rent collected from August 1, 1931, to February 1, 1932, $3499.98;

3. Difference between rent reserved and rent collected for February, 1932, $616.47;

4. Difference between rent reserved from March 1, 1932, to the termination of the lease, and the probable revenue from re-letting the premises, $81,250.03.

At the hearing evidence was introduced of certain new leases entered into for parts of the premises by the lessor, and also opinion evidence of the present rental value of the premises. Upon this state of the record there is presented the question of the extent of the lessors provable claim against the assets of the defendant corporation in the hands of the receiver.

In view of the notices served by the lessor upon the lessee and the receiver, which formed the predicate for

the entry of August 4, 1931, consented to by the lessor, in which it was adjudged that the lease had been terminated by said notices, it must be assumed as a fact that said lease was so terminated. In doing so the Court gives full effect to the provision in the entry to the reservation of the right of the lessor to prove his claim without any prejudice resulting from his consent to said entry. The termination of the lease results from his own act of serving the notices and not from the entry of the Court. The entry was simply a recital of a fact already accomplished in that respect.

In approaching the consideration of the rights of the lessor, the first subject that naturally suggests itself is the date upon which the rights of the parties became fixed. In the absence of a statute courts of equity in cases in which receivers are appointed are accustomed to fix by entry the time within which claims should be presented and to direct notices in some form to be given to creditors. However, notwithstanding the failure of a creditor to present his claim within the time fixed, such courts have allowed the claimant to participate provided he filed his claim at any time before distribution. The rule on this subject is stated in *Clark on Receivers,* (2d) section 652, as follows:

"In practice an order is made by the Court limiting the time within which claims shall be presented and proved in order to facilitate the proceedings and to promote dispatch in the settlement of the estate. But no creditor thereby obtains a vested right to a certain dividend to the exclusion of others. If a reasonable excuse for delaying to make an earlier claim is shown, the creditor will be admitted at any time before actual distribution, or even after partial payment, if there be a surplus in the hands of the receiver so as not to interfere with payments already made. *Without statute a court of equity has no power to make an order absolutely barring creditors from participating in the fund.*"

In equitable receiverships, therefore, and in administration suits under statutes containing no limitation of time all creditors who are able to place their claims in

provable form pending the suit, and before distribution, are entitled to participate. *Clark on Receivers* (2nd Ed.) 446; *Baker* v. *Herrlinger,* 16 Oh. App. 253.

This receivership is not based upon the general equity powers of the Court. It is a statutory receivership authorized by Sections 8623-86 and 8623-92, General Code, in which latter section it is enacted that—

"Whenever after either voluntary or judicial dissolution of a corporation a receiver is appointed to wind up the affairs of such corporation, all the rights, interest, liens or claims of creditors, claimants and shareholders shall be fixed and determined as of the day on which such receiver was appointed."

That the statutory rule is exclusive is pointed out in *Filene's Sons Co.* v. *Weed,* 245 U. S. 597, at 601 and 602, as follows:

"Certainly the fact that the termination of the lease happened after the filing of the bill has no such effect, although the sum was not presently payable until then. *When a statutory system is administered the only question for the courts is what the statutes prescribe.* But when the courts without statute take possession of all the assets of a corporation under a bill like the present and so make it impossible to collect debts except from the court's hands, they have no warrant for excluding creditors, or for introducing supposed equities other than those determined by the contracts that the debtor was content to make and the creditors accept. In order to make a distribution possible they must of necessity limit the time for the proof of claims. But they have no authority to give to the filing of the bill the effect of the filing of a petition in bankruptcy so as to exclude any previously made and lawful claim that matures within a reasonable time before distribution can be made."

The receiver was appointed in this case immediately upon the filing of the petition and before a decree of dissolution was entered, under authority of Section 8625-88, General Code. He was appointed not to wind up the corporation but to preserve the property pending the hearing. At that time it could not be determined definitely that a dissolution would be decreed and it seems

to the Court that it must consider that the authority of the Court to appoint the receiver at that time was predicated upon the general equity jurisdiction of the Court and such appointment did not have the effect at that time of fixing the rights of the parties. That effect only resulted when the decree of dissolution was entered on July 17, 1931, and the receiver continued under the order of the Court for the purpose of "winding up the affairs" of the corporation, as provided in Section 8623-92, General Code. The Court therefore reaches the conclusion that in this case the rights of all claimants must be fixed and determined as of that date.

Notwithstanding the Court made an order directing that all creditors file their claims on or before the 15th day of August, 1931, the date on which the rights of the parties are to be fixed is July 17, 1931, and no change in the status of the claimant subsequent to that date can enlarge or diminish his rights.

Because of the entry of August 1, 1931, making the lessor a party, with leave to plead, the Court holds that the intervening petition is sufficient to present the merits of his claim, notwithstanding it was filed subsequent to the date fixed for the filing of proofs of claims.

It seems to the Court that it would contribute to a correct decision of this case to consider first what would be the rights of the lessor in the absence of any provision in the lease affecting his remedial rights upon a breach of the covenant to pay rent or the violation of any other condition of the lease.

The law relating to real estate is more intimately entwined with the development of the race than any other branch of the law. It is in that branch of the law that the doctrine *stare decisis* is the guide even though the reason for the rule may seem to have entirely disappeared. It is the field in which history holds sway over logic. Analogies drawn from other fields of the law are inapplicable to cases relating to real property. As is said by Mr. Justice Holmes in *Gardiner* v. *Butler*, 245 U. S., 603, at 605:

"But the law as to leases is not a matter of logic *in vacuo*. It is a matter of history that has not forgotten Lord Coke."

This historical background is all controlling in determining the nature of rent.

In the case of *Rawson* v. *Brown*, 104 O. S., 537, the court at 542 said:

"To the extent that leasehold estates have, by statute, been subjected to the rules which govern estates in fee, of course the rules of the common law, in respect thereto, have been abrogated; but beyond this, the common law continues to furnish the only rules for the guidance of courts in determining the rights of parties in relation to leasehold estates."

It is therefore necessary for us to determine what the common law was upon this subject. In *Gardiner* v. *Butler*, *supra*, at page 605, the court said:

"Massachusetts has followed the English tradition and we believe that it is the general understanding in that state that in the absence of statute or express contract a lessor who has terminated a lease and evicted the tenant has no further claim against the lessee."

. And in *Filene's Sons Co.* v. *Weed*, *supra*, at page 601, the court said:

"Rent issues from the land, is not due until the rent day, and is due in respect of the enjoyment of the premises let."

In deference to the historical basis of the rights of the lessor and lessee, the court held in *Wells* v. *Twenty-First Street Realty Co.*, 12 Fed. (2d), 237, as stated in the syllabus, that:

"In Ohio common law rule obtains, in reference to claims for damages for anticipatory breach of lease of real estate, liquidated in accordance with Bankruptcy Act, Sec. 63b, and claim is not provable in bankruptcy, under Section 63a4 (Comp. St., Section 9647)."

At page 239 the court says:

"The law seems to be well settled that, in states where the common law obtains, a claim for damages for an anticipatory breach of a lease for real estate is not provable in bankruptcy."

Under the provisions of the Bankruptcy Act fixed liabilities absolutely owing at the time of the filing of the petition were and are provable and by Section 63b of the Act—

"Unliquidated claims against the bankrupt may, pursuant to the application of the Court, be liquidated in such manner as it shall direct and may thereafter be proved and allowed."

Notwithstanding this latter provision of the Bankruptcy Act the court held in *Wells* v. *Twenty-First Street Realty Co., supra,* that the claim of the lessor for damages on account of the bankrupt's anticipatory breach of its covenant to pay rent was not such a claim as could be liquidated and then proven. The same result was reached in the case of *In Re McAllister Mohler Co.,* 46 Fed. (2d), 91, which likewise involved the application of the law of Ohio on the subject of the rights of lessor and lessee of real estate.

The legal view of rent still is that its existence begins as it accrues and that prior to its accrual it has no status in the law. Prior to that it is a part of the land itself from which it evolves as it accrues and then and only then has it a separate existence.

The court therefore reaches the conclusion that in the absence of a provision in the lease modifying the rights of the parties, rent to accrue in the future is not a claim susceptible of liquidation by any means known to the law so as to make it a provable claim against the estate of the lessee in the process of judicial administration. Therefore, the rights of the lessor, if any, must be founded upon a conventional variation of the common law rule. We look to the terms of the lease to see whether the parties made any valid provision for a remedial right in favor of the lessor upon breach by the lessee.

The lease makes provision for certain remedies in two contingencies. The first which we will consider is that arising upon the appointment of a receiver, the provision covering which has already been quoted. It will be noted that the only provision in that contingency is that the lease shall be terminated, and that all future installments of rent unpaid, etc., shall at once become due and payable. Such a provision was under consideration by the Supreme Court of the United States in *Kothe* v. *Taylor,* 280 U. S., 224, in which the court held, as stated in the syllabus, that:

"1. A stipulation in a contract to pay a fixed sum as liquidated damages in case the contract be broken, will not be enforced if the amount fixed is plainly without reasonbale relation to any probable damages from a breach. P. 226.

2. In a lease for two years the lessee agreed that the mere filing of a petition in bankruptcy against him should be deemed a breach and that thereupon, *ipso facto,* the lease should terminate and the lessor become entitled to re-enter and also to recover damages equal to the full amount of the rent reserved for the remainder of the term. The lessee became bankrupt, and the lessor claimed $5,000, equal to 15 months' rent. *Held,* that the claim should not be enforced against the trustee in bankruptcy, as (on the case submitted, the provision in the lease must be regarded as one for a penalty apparently designed to insure the lessor preferential treatment in the event of the lessee's bankruptcy. P. 226.

3. Agreements tending to defeat the purpose of the Bankruptcy Act to bring about an equitable distribution of the bankrupt's estate among creditors holding just demands based upon adequate consideration must be regarded with disfavor. P. 227. 30 F. (2d), 77, reversed."

The same reason for holding such a provision to be a penalty designed to insure to the lessor preferential treatment in the event of the lessee's bankruptcy is equally applicable in the case of a dissolution of a corporation and a distribution of its assets under the statutes of Ohio. There is no just relation between the damage resulting from the failure to pay rent and the provision of the

lease giving to the lessor the entire rent for the whole term, in addition to restoring to him the possession of the property. The amount of the rent reserved constitutes the lessor's judgment as to the value of the use of the property. When the lease is terminated and the possession restored to the lessor, a provision giving to him the total rent reserved, does not constitute a *bona fide* liquidation of his damages, but is an attempt to give double compensation for the same breach.

Upon the subject of the distinction between liquidated damages and the penalty see *Milling Co.* v. *Baking Co.,* 95 O. S., 180, and 13 Ohio Jurisprudence, page 220.

We are forced to the conclusion that the lease contains no valid provision providing for a remedial right in favor of the lessor upon termination of the lease by the receivership.

The other provision of the lease for a remedy in favor of the lessor is brought into existence upon default by the lessee of any covenant or agreement contained in the lease giving to the lessor the right to terminate the lease "before the expiration date originally fixed." In that contingency, that is, upon default by the lessee in the performance of any convenant or agreement and the termination of the lease by the lessor, the lessor was authorized, as the agent of the lessee or otherwise, to repair, alter and lease the premises and apply the net rent to the payment of the rent to the fulfillment of the lessee's covenants in the lease, and the lessee agreed to pay and be liable for "amounts equal to several instalments of rent as they would, under the terms of this lease, become due if no default had occurred * * * but the lessee shall be entitled to be credited *at the end of each month* with any net amounts actually received by the lessor *during such month.*" Instead of this language precipitating the time of payment, it seems to the court that it expressly provides the contrary and that by its terms the lessee shall not be obliged to pay except upon the accrual of each monthly installment of rent, and then only after being

credited with the amount collected by the lessor from others to whom he had rented the premises.

The rights of lessor and lessee under a lease containing equivalent language was before the Court of Appeals of New York in the case of *McCready* v. *Lindenborn,* 172 N. Y., 400. In order to bring the facts of that case before us the syllabus is quoted in full:

"Under a lease demising premises for a special term at an annual rent payable in equal monthly payments in advance, and providing that if the premises should become vacant during the term the lessor might re-enter and relet them as agent of the lessee, applying the rent, first, to the payment of the expenses of re-entering and then to the payment of the rent due under the lease, the lessee to remain liable for any deficiency; and further providing that, if any default should be made in the payment of the rent, 'the said hiring and the relation of landlord and tenant, at the option of the party of the first part, shall wholly cease and determine, and the party of the first part shall and may re-enter * * * and in such case the party of the second part shall and will pay or cause to be paid to the party of the first part, as damages for the breach of the covenant for rent herein, the difference between the amount of rent hereby reserved and the amount of rents which shall be collected and received, or might with due diligence be collected and received from the said demised premises during the residue of the said term remaining unexpired at or immediately before the time of such re-entry in equal monthly payments as the amount of such difference shall from time to time be ascertained,' when the lessee fails to pay the rent for a special month and the lessor takes possession under the re-entry clause, an action does not lie for the breach of the lease in its entirety and the recovery of all damages in a single action brought before the expiration of the term, since the defendant's breach consists simply of a failure to pay in monthly instalments the money damages stipulated for in the re-entry clause, to be ascertained in accordance with the agreement of the parties, and the remedy as provided therein must be exclusively followed. The plaintiff, however, may maintain an action to recover the rent, as such, for the month specified and may join with it a cause of action for the breach and may recover as damages the deficiency ascertained in the manner provided by the lease

for each month thereafter until the commencement of the action; for any deficiency after that date she must resort to another action."

We also quote from pages 406 and 407 of the opinion:

"One unbroken covenant survived re-entry, because it provided expressly for that contingency by authorizing the lessor to relet the premises and requiring the lessee to pay any deficiency in equal monthly payments as the amount thereof should, from month to month, be ascertained by deducting from the rent reserved the rents received, less the expense of such repairs as the tenant covenanted to make, and less also, as is reasonably to be implied from authority to relet, the reasonable expenses of reletting and collecting. By the express contract of the parties a separate and independent cause of action arose under this covenant every month when there was a deficiency ascertained in the manner provided. The plaintiff was at liberty to allow the causes of action for monthly deficiency to accumulate and to recover upon several at the same time, but she could not recover any deficiency until it had actually accrued and had been ascertained in the mode provided by the covenant. The defendant agreed to pay 'as damages for the breach of the covenant for rent' the difference between the rent reserved and the rent received 'in equal monthly payments as the amount of such difference shall from time to time be ascertained.' Aside from the rent accruing prior to re-entry, the plaintiff could recover only on this covenant, and hence she was entitled to no damages except such as had accrued and were due and payable at the time the action was commenced. She could not even recover any deficiency accruing after the commencement of the action and before the trial thereof, because such damages had not been ascertained as required by the contract at the time the action was commenced, and hence were not then due and payable."

It seems to the court that the construction which the court placed upon the language of the lease in *McCready* v. *Lindenborn* is correct and that the reasoning of the court is equally applicable to the language of the lease in the case at bar. The result is that the lease contains no provision modifying the common law rule making inapplicable the doctrine of anticipatory breach of the provisions of the lease.

In *Baker* v. *Herrlinger, supra,* which is relied on by the lessor, the claim was asserted against an assignee for the benefit of creditors and was allowed in full, because at the time of the hearing the entire claim had accrued. There was no statute designating a date upon which the rights and remedies of claimants should become fixed and therefore the equitable rule allowing claimants to come in at any time before distribution was applied.

Our conclusion is therefore that neither under the provisions of the lease nor under the law in the absence of any such provision has the lessor any provable claim against the assets in the hands of the receiver of this dissolved corporation based on rent to accrue subsequent to the 17th day of July, 1931, and that the extent to which the lessor's claim is provable is for the balance due him for those installments of rent that should have been paid on June 1, 1931, and July 1, 1931. An order may be prepared allowing the claim of the lessor to that extent and disallowing the remainder of the claim.